**R. R. RICHMAN, d/b/a AAA Cycles, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 76 C 1491.**

United States District Court, N. D. Illinois, E. D.

March 22, 1978.

Michael von Mandel, Chicago, Ill., for plaintiff.

Myron C. Baum, Acting Asst. Atty. Gen., Daniel J. Dinan, Robert M. Greco, Attys., Dept. of Justice, Washington, D. C., Samuel K. Skinner, U. S. Atty., Northern District of Illinois, William A. Barnett, Jr., Asst. U. S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION

WILL, District Judge.

This is an action for the refund of interest and penalties collected from the plaintiff with respect to the years 1970 through 1972 in the total amount of $5,361.41, plus interest and costs according to law. Two questions are before us on plaintiff's motion for summary judgment and the defendant's motion to dismiss. Defendant contends that the Court does not have jurisdiction over this action on the ground that the claim for refund which plaintiff filed stated a different basis than that relied upon in this suit.[1] Plaintiff, on the other hand, urges that (1) the Court does have jurisdiction, (2) the record establishes that the plaintiff paid the taxes, interest and penalties under duress and, (3) since his statutory personal liability is limited to the unpaid taxes only, he is entitled to a refund of the interest and penalties which he paid. In addition, plaintiff seeks an award of attorney's fees pursuant to Title 42 U.S.C. Section 1988.

For the reasons hereinafter stated, we conclude that (1) the claim for refund is sufficiently similar to the basis for recovery asserted here that the Court has jurisdiction, (2) plaintiff paid the taxes, interest and penalties pursuant to a demand by agents of the Internal Revenue Service accompanied by threats to close his business and auction off the assets to satisfy their demand if $25,000 was not paid immediately and, therefore, it was paid under duress and not voluntarily, (3) plaintiff, as a "responsible person" under Title 26 U.S.C. Section 6672, was liable for any unpaid withholding taxes but not interest and penalties, (4)

plaintiff is therefore entitled to recover the amount of such interests and penalties paid by him under duress, and (5) plaintiff is not entitled to recover attorney's fees under Title 42 U.S.C. Section 1988.

## I. *The Facts*

The parties entered into a stipulation of uncontested facts which incorporated the plaintiff's deposition. The following is a summary of what we find to be the undisputed relevant facts. The plaintiff, Ronald R. Richman, is an individual and resides in Chicago, Illinois. In 1965, he founded AAA Cycles as a sole proprietorship. AAA Cycles was in the business of motorcycle sales repairs and was located in Lawrence, Indiana.

In June 1970, AAA Cycles was incorporated under the laws of Indiana and plaintiff was the principal stockholder during the period here involved. The corporation failed to pay the applicable withholding taxes for any of the quarters during 1970–71.

During the period 1970 through the first two weeks of February 1972, plaintiff resided in Chicago and did not engage in the operations of either the sole proprietorship or the corporation. Upon learning in February 1972 that the general manager and the treasurer who was the wife of a close friend of plaintiff were romantically involved, plaintiff discharged the manager and the treasurer simultaneously resigned. After their departure, the plaintiff found a number of federal withholding tax returns covering about two years in a desk drawer at the corporation. Not knowing whether the returns were originals or copies of returns which had been filed and the tax paid, he sent them to the Internal Revenue Service in Indianapolis to ascertain their status.

Shortly thereafter, he was advised that the returns had not been filed and the taxes not paid. About two months later, after a

---

1. Defendant also suggests in a footnote to its brief that plaintiff has no standing to sue because he paid the taxes, interest and penalties voluntarily for AAA Cycles. It further suggests that the record, even though it contains plaintiff's deposition, is inadequate to enable a determination of whether the payment was voluntary or under duress.

number of conferences with IRS representatives, plaintiff believed arrangements had been agreed to under which the amounts due would be paid over a period of six to eight months. Instead, the next day a demand was made on plaintiff for the immediate payment of $25,000 on the ground that he was personally liable for the unpaid withholding taxes of AAA Cycles. In the course of presenting their demand, the Internal Revenue Service collectors or agents told plaintiff that "if they could not have the money by the next morning, they would padlock the door and auction everything off," and the proceeds would be applied to the $25,000 tax owed. They also advised him that, if the auction of the AAA Cycle assets produced less than $25,000, they would then auction off plaintiff's personal assets, including his house, until the $25,000 was paid. They pointed out that an auction sale would probably "realize something like 5 cents on the dollar, 10 cents on the dollar." Since he would be personally liable for any amount less than $25,000 realized from the auction of the AAA Cycle assets, they told plaintiff "it would be much better if I would come up with the money by the next morning." The agents locked the AAA Cycle premises at 5 o'clock but said they would unlock them the next day if plaintiff had the $25,000 by 9:00 a. m.

Plaintiff and the agents discussed how he could possibly obtain $25,000 by the next day and he told them that he had about $5,000 in personal savings, life insurance with a cash surrender value of approximately $10,000, could possibly borrow as much as $5,000 from his father, his son had about $2,300 in an account for college, a friend might possibly lend him about $2,500 and he would also try to borrow from his sister. The agents originally insisted that the $25,000 be in hand at 9:00 o'clock the next morning. Plaintiff protested that it would be virtually impossible for him to assemble the $25,000 by 9:00 a. m. and the agents agreed to wait until 10:00 a. m. At 11:00, they had not yet arrived, which was fortunate since "All the money wasn't there at 11:00." They arrived at noon, by which time plaintiff had secured $25,000 from various sources, which $25,000 he paid to the agents.

Both on the previous day and on the payment date, plaintiff asked for an itemization as to how the $25,000 was computed, stated that in his opinion only some $13,000 was unpaid and asked if any penalties were included. He was told that the itemization had been made, that the "work papers are back in the office" but that they would be mailed to him.

The plaintiff subsequently filed all the required returns and it was ultimately determined that the unpaid taxes totaled $18,927.35, interest thereon was $1,079.12 and penalties were imposed of $4,282.29, or an aggregate $24,288.76. The total of $5,361.41 represented the penalties and interest.

The plaintiff initially filed a claim for refund in May of 1972 which was returned at least three times by the IRS. The final claim, which was not returned, is dated September 10, 1973. It is undisputed that this was a timely filing.

During the course of his discussions with representatives of the IRS concerning his refund claims, plaintiff stated that he did not consider himself personally liable for late filing penalties and interest. In the September 10, 1973 claim form which was not returned, plaintiff asserted that interest and penalties were not correctly computed. Under date of April 26, 1974, the claim was rejected. This suit was timely filed on April 20, 1976.

## II. Jurisdiction

■ The defendant contends that the Court lacks jurisdiction because "plaintiff's theory for recovery in this action is completely at variance with the theory for recovery set forth in plaintiff's claim for refund." The government concedes, as it must, that the claim for refund seeks recovery of the penalties and interest, precisely what is sought here. It urges, however, that because plaintiff stated in his claim that the penalties and interest were not correctly computed, he cannot now recover

them on the ground that no penalties and interest should have been charged against him.

This case is a classic example of why the Internal Revenue Service enjoys such low repute. It also illustrates why persons who start out as willing and cooperative taxpayers end up tax avoiders. Plaintiff here initiated the entire unbelievable procedure by voluntarily inquiring of the IRS if the withholding tax forms, which he found in the desk when he went to the AAA Cycles office, were duplicates or represented unfiled, unpaid original returns. Apparently, the IRS internal procedures had not revealed that the returns had not been filed for two years even though returns for years prior to 1970 were apparently filed and the withholding taxes paid.

After being advised that the returns had not been filed and no taxes had been paid, plaintiff conferred with IRS representatives and, he understood, entered into an agreement under which he would pay the taxes over a six to eight month period. The next day, however, IRS collectors appeared and made a demand for the immediate payment of $25,000 under the threat of closing the business and auctioning off so much of the business' and plaintiff's property as would generate that amount. The agents actually padlocked the door of the business but said they would unlock it the next morning if the $25,000 were paid by 9:00 a. m. If not, they would proceed with the auction. In a conversation which sounds distressingly like those between "juice loan" debtors and collectors, they discussed various sources from which plaintiff might assemble the $25,000 including borrowing on his life insurance, from his father, his sister and a friend, diverting his son's college fund, etc.

When plaintiff asked for an itemization of the unpaid taxes, asserting that they could not possibly be an even $25,000 and, he believed, were nearer $13,000, he was told that a calculation had been made but that it was "in the office." He was told that the calculation would be mailed to him although the IRS agents were scheduled to return the next day to collect the $25,000. It was not until months later, after plaintiff had filed all the returns for the various quarters, that he was advised that the unpaid taxes totalled $18,927.35 and an additional $5,361.41 in interest and penalties was being assessed, or a total of $24,288.76. No explanation for the collection of the additional $711.24 was apparently ever given. Unfortunately, the plaintiff never sought return of the $711.24 and the statute of limitations has apparently run, although on what theory the government is entitled to keep it eludes us.

Although the IRS personnel involved knew and asserted that they were imposing the corporate withholding tax on plaintiff as a "responsible person" under Title 26 U.S.C. § 6672 and also knew, therefore, that he was not liable for either penalties or interest, they nevertheless proceeded to collect both under the threat of auctioning off his property at "something like 5 cents on the dollar, 10 cents on the dollar." This comes very close to robbery by government agents acting under color of law.

By dint of extraordinary efforts, as previously outlined, the plaintiff raised $25,000 by noon of the next day. The IRS agents took it and removed the padlock from AAA Cycles' door, telling him again that they did not have a computation of how the $25,000 was arrived at but one would be sent to him.

After three or more attempts to file a refund claim which would be accepted, the plaintiff finally succeeded in getting a claim form filed and accepted which was subsequently disallowed. He then filed this suit.

In light of the IRS' conduct in this case, we probably should not be surprised that the government should now seek to retain the interest and penalties to which it is admittedly not entitled under the law on the basis of a hyper-technicality. To be sure, it can be contended that a refund claim which asserts interest and penalties are not correctly computed is not the same as one contending that no interest or penalties should have been assessed and collect-

ed. On the other hand, it is possible to contend that a correct computation of penalties and interest would have shown none to be owed by plaintiff and that the claim is, therefore, consistent with the grounds asserted here.

In this connection, plaintiff, in his deposition, stated that in the course of his discussions with IRS representatives concerning his refund claim, he informed them that he did not consider himself personally liable for late filing penalties. As previously indicated, the parties have included plaintiff's deposition in the stipulated undisputed facts. It appears then that, between the ubiquitous language of the claim form, plaintiff's oral statements plus the knowledge which the IRS personnel should have had that collection of penalties and interest from the plaintiff was improper, the IRS was on notice that plaintiff was seeking a refund of the penalties and interest. In *Brandt & Brandt Printers, Inc. v. United States,* 162 Ct.Cl. 582, 300 F.2d 457 (1962) at page 461, the Court of Claims observed in language which is appropriate here:

"The purpose of a specific claim for refund is to give the Internal Revenue Service notice of the nature of the claim. The defendant in this instance not only knew of the nature of the claim, but had levied an assessment of interest and penalties . . .. If the officials of the Internal Revenue Service did not know what it was all about in these circumstances they were treading nearer to the border of 'dumbness' than we think they ever approach."

If ever there was a case in which the government should not be urging hypertechnical defenses, this is it. The conduct of the IRS agents was almost beyond belief. For the government to contend that it should retain the amount to which it admittedly is not entitled either on the ground that the refund claim is not as explicit as it might have been or, as a footnote in its brief suggests, that plaintiff paid the amounts voluntarily and not under duress, is the ultimate absurdity in this bizarre episode. Cases like *Busse v. United States,*

542 F.2d 421 (7th Cir. 1976), cited by the government, in which a lady voluntarily paid her ex-husband's tax to satisfy an IRS lien on a piece of property in which she had an interest are simply irrelevant.

### III. *Attorney's Fees*

Plaintiff's counsel seeks allowance of attorney's fees pursuant to 42 U.S.C. § 1988, as amended by Public Law 94–559, the so-called "Civil Rights Attorney's Fees Awards Act of 1976." The portions of the Act relevant to tax cases provide:

"[I]n any civil action or proceeding, by or on behalf of the United States of America to enforce, or charging a violation of, a provision of the United States Internal Revenue Code, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

The government asserts that the statutory language as well as the legislative history, referring to a statement by Senator Kennedy, is clear that the so-called "Allen amendment" quoted above is applicable only in actions brought by the government. Plaintiff's counsel, on the other hand, points out that limiting recovery of attorney's fees to cases brought by the government which it loses makes no sense in the tax field, since the taxpayer is necessarily the petitioner in the Tax Court or plaintiff in a refund case in the District Court, the two most usual proceedings in which a tax claim of the government is litigated. The only situation in which the government is the plaintiff is where the taxpayer does nothing, the government can find no assets to levy against and, therefore, files suit in the District Court to reduce its proposed assessment to judgment. Normally, however, the taxpayer either files a petition in the Tax Court or pays the tax and sues for a refund in the District Court as in the instant case.

He also quotes Senator Allen to the effect that the insertion of "proceeding" in the amendment was intended to permit allowance of attorney's fees "in connection with audits or other IRS agency proceed-

ings . . . by a court on application of a prevailing taxpayer." (123 Cong.Rec. S. 732, Jan. 19, 1977). Allen stated at the same time:

"I also included the term 'proceeding' so that it would be clear that in any case involving a disputed tax, the court would be free to award attorney fees so long as the taxpayer prevailed and the court felt that a fee award was appropriate considering all factors in the case and notwithstanding the formalistic characterization of the taxpayer as plaintiff or defendant or as appellant or appellee.

\* \* \* \* \* \*

"Thus, differing standards with respect to a plaintiff or a defendant, which a court might for policy reasons apply in litigated controversies in other areas of law, have no proper application in tax disputes."

■ It is obvious that Senator Kennedy and Senator Allen had opposite understandings of the "Allen amendment." Legislative history or the intent of the sponsor are relevant only if the legislative language is ambiguous. Unfortunately for Senator Allen's worthy intentions, his language is unambiguous as every court which has examined it has found. See, *e. g., Key Buick Co. v. Commissioner,* 68 T.C. No. 17 (1977). It is difficult to interpret "in any civil action or proceeding, by or on behalf of the United States of America to enforce or charging a violation of, a provision of the United States Internal Revenue Code," the statutory language, to include a suit "by or on behalf of a taxpayer challenging the application of a provision of the United States Internal Revenue Code." In addition, as the Tax Court pointed out in *Key Buick, supra,* Senator Allen's comments were made January 14, 1977, more than three months after passage of the statute and, accordingly, can hardly be considered as evidence of what others understood they were enacting. Senator Kennedy's comments and similar observations, on the other hand, were made during Senate consideration of the bill in September 1976.

■ We regret that the language of Section 7442 is not susceptible of the interpretation Senator Allen says he intended. In the instant case, we would be happy to award plaintiff attorney's fees if there were any basis for so doing. He deserves at least to be made whole for his out-of-pocket expenditures and the government deserves to be penalized for the conduct of its agents. If attorney's fees could be awarded, it might deter IRS personnel from similar conduct in the future. Unfortunately, there is no way for us to do so even though we agree with plaintiff's counsel that the statutory language compels an illogical, even ridiculous, result. The correction, however, rests with the Congress, not the courts.

### IV. *Conclusion*

Plaintiff is entitled to judgment in the amount of $5,361.41 together with interest as provided by law and costs. Unfortunately, he is not entitled to attorney's fees. A judgment consistent with the foregoing will enter and counsel are requested to agree on the amount of the judgment, interest and costs and present an agreed judgment order.