ESTATE OF JOHN SMITH, VIRGINIA SMITH, EXECUTRIX,
PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket No. 6546–77. Filed November 21, 1979.

*Frederick Gelberg, Burton Smoliar*, and *Franklin L. Green*, for the petitioner.

*Joan Ronder Domike*, for the respondent.

## OPINION

TIETJENS, *Judge:* Respondent determined a deficiency of $38,636.82 in petitioner's Federal estate tax. The only issues for our determination are (1) whether decedent possessed any incident of ownership in two life insurance policies sufficient under section 2042(2)[1] to include their proceeds in his gross estate and (2) whether petitioner is entitled to reasonable attorney's fees under the provisions of Pub. L. 94–559, 90 Stat. 2641, October 19, 1976, amending 42 U.S.C. sec. 1988.

This case was fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The stipulation of facts and attached exhibits are incorporated herein by reference.

Petitioner's address when the petition was filed was Los Angeles, Calif. Petitioner timely filed its Federal estate tax return with the Director of Internal Revenue, Los Angeles District, Hollywood Office, Los Angeles, Calif. At the time of his death, decedent John Smith (hereinafter Smith or decedent), together with his wife, Virginia, were residents of California.

At the time of Smith's death, on May 27, 1973, he was insured

---

[1]All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise stated.

under two life insurance policies issued, respectively, on March 10, 1965, and on August 24, 1967, by the Great West Life Assurance Co. The face amount of each policy was $100,000. At the date of Smith's death, with respect to the earlier issued policy, the cash surrender value was $23,018.58, and the cash value of the bonus dividends was $7,220.30; with respect to the other policy, the cash surrender value was $16,699.20, and the cash value of the bonus dividends was $3,997.46.

At all times pertinent, the owner and beneficiary of the policies was Dye Masters, Inc. (hereinafter the company), Smith's employer. The company paid all the premiums on these policies and, upon Smith's death, received the entire proceeds. In June 1970, the company became a wholly owned subsidiary of National Spinning Co., Inc., a corporation whose stock is publicly traded and in which Smith did not have a significant stock ownership interest.

Paragraph seven of the employment agreement between decedent and the company provided:

> At the present time the Employer is carrying certain life insurance upon the life of the Employee for the benefit of the Employer. The Employer may, at its option, elect to pay the premiums upon said policy and keep said policy in full force and effect; and the Employee agrees that the Employer shall have the right to continue to designate itself the beneficiary thereof so long as the Employer shall pay the premiums. If the Employer shall elect not to pay the premiums and not to keep said policy in full force and effect or if the Employer shall, at any time after the date hereof, decide to surrender and terminate said policy, the Employer agrees to first give the Employee the right to take an assignment of all of the Employer's rights and obligations thereunder in exchange for an amount equal to the cash value of said policy on the date of assignment.

Other than paragraph seven, there were no arrangements between Smith and his employer concerning the policies.

Petitioner contends that decedent, at the time of his death, did not possess any incident of ownership within the meaning of section 2042(2), since (1) he only had a right to purchase the policies at a price equal to their cash surrender values if, and only if, the company chose not to retain their ownership, (2) the company did in fact always retain ownership, and (3) the proceeds were paid to the company. Petitioner, moreover, requests reasonable attorney's fees on the ground that respondent is pursuing a legal theory without any merit.

Respondent argues that Smith died possessed of an incident of

ownership in the two policies because, under the employment agreement, if the company elected not to pay the premiums or to surrender and terminate the policies, he could prevent the company from changing the beneficiary and could take an assignment of the policies in exchange for an amount equal to their cash surrender values. Respondent, further, contends that petitioner is not entitled to attorney's fees (1) as a matter of law and (2) as a matter of fact, since respondent's legal position is not frivolous, vexatious, unfounded, harassing, or instituted in bad faith, but founded on sound principles of Federal estate tax law.

We agree with petitioner that Smith did not possess any incident of ownership to cause the inclusion of the policies' proceeds in his gross estate.

We agree with respondent that petitioner is not entitled to attorney's fees.

Section 2042(2) provides for the inclusion in the value of decedent's gross estate, of proceeds of life insurance receivable by beneficiaries other than the executor: "To the extent of the amount receivable by all other beneficiaries as insurance under policies on the life of the decedent with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person." Section 20.2042-1(c)(2), Estate Tax Regs., provides in part:

the term "incidents of ownership" is not limited in its meaning to ownership of the policy in the technical legal sense. Generally speaking, the term has reference to the right of the insured or his estate to the economic benefits of the policy. Thus, it includes the power to change the beneficiary, to surrender or cancel the policy, to assign the policy, to revoke an assignment, to pledge the policy for a loan, or to obtain from the insurer a loan against the surrender value of the policy, etc. * * *

At the time of Smith's death, all of the incidents of ownership inexhaustively enumerated in the regulation were held by the company. Whatever rights Smith may have acquired under paragraph seven of his employment agreement were contingent ones dependent on an event which never occurred and over which he had no control.

Respondent's position on this question is embodied in Rev. Rul. 79-46, 1979-1 C.B. 303. The ruling incorporates substantially the same facts as those herein, although the ruling describes

decedent's spouse, rather than his employer, as the designated beneficiary of the insurance proceeds. Respondent relies on this revenue ruling to extend the reach of the regulations. Rulings, however, do not have the force and effect of Treasury Department Regulations, *Dixon v. United States*, 381 U.S. 68 (1965); *Helvering v. New York Trust Co.*, 292 U.S. 455 (1934); *Hartman v. Commissioner*, 34 T.C. 1085 (1960), affd. per curiam 296 F.2d 726 (2d Cir. 1961), and need not be followed where they unwarrantedly expand the scope of the statute.

While we agree with respondent that the difference in the identity of the beneficiary is not necessarily the critical factor in deciding whether the proceeds of the two life insurance policies are includable, under section 2042(2), in Smith's estate,[2] respondent himself has distinguished situations where the employer was the beneficiary of a life insurance policy on a sole or controlling stockholder's life. According to section 20.2042–1(c)(6), Estate Tax Regs., a corporation's incidents of ownership will not be attributed to a decedent who is its sole or controlling stockholder to the extent that the corporation is the beneficiary of the policy. Since respondent excepts from section 2042 situations in which a controlling shareholder can indirectly possess powers over a life insurance policy where the beneficiary is the corporation, certainly respondent must recognize that where Smith did not control a corporation which was the sole beneficiary of two policies on his life, there is a more compelling reason for the exclusion of these proceeds from Smith's estate.

In *Estate of Morrow v. Commissioner*,[3] 19 T.C. 1068 (1953), we held that the proceeds of a life insurance policy were not includable in the gross estate of the insured although the employer, owner of the policy, had notified the employee-insured that its purpose was to pay $5,000 from the proceeds to a member of the employee's family as designated by him. We so held despite evidence that, at the time of his death, the employee might also have possessed the right to buy the policy from his employer for its cash surrender value.

Respondent contends that *Morrow* was incorrectly decided; alternatively, he argues *Morrow* is factually distinguishable on

---

[2] The pivotal issue is whether, at his death, decedent actually possessed any "incidents of ownership" in these policies.

[3] Respondent has recently withdrawn its acquiescence in *Morrow*. Acquiescence 1954–1 C.B. 5; nonacquiescence 1979–33 I.R.B. 5.

the basis that, in *Morrow*, the employer merely gratuitously informed the employee in a letter that if he left the company or if the company desired to discontinue the insurance, he would be able to make the purchase, while in the instant case the power arose from Smith's employment agreement.

We, however, do not repudiate *Morrow* and find no meaningful difference between Smith's employment agreement and the letter in *Morrow* since, in *Morrow*, we stated that the proceeds of the policies were not includable in decedent's gross estate even on the assumption that the letter and surrounding circumstances constituted a binding contract. The decedent's rights in *Morrow*, moreover, were actually more extensive than those at issue here. In *Morrow*, the decedent had the right to acquire the policy on termination of his employment, an act which he could well control. The employer, in *Morrow*, also permitted the employee to designate a member of the family to whom the company paid one-half of the proceeds upon his death.

Respondent characterizes Smith's right as a veto power which renders the proceeds includable in Smith's estate. He cites *Commissioner v. Estate of Karagheusian*, 233 F.2d 197 (2d Cir. 1956); *Goldstein's Estate v. United States*, 129 Ct. Cl. 264, 122 F. Supp. 677 (1954), cert. denied 348 U.S. 942 (1955); *Schwager v. Commissioner*, 64 T.C. 781 (1975), for the principle that where a decedent acting with another can exercise an incident of ownership, it makes no difference whether he could have initiated changes or merely consented to them.

At his death, Smith could neither have initiated changes in the two policies nor consented to them; the company alone maintained full control over the policies.

Respondent further cites *Commissioner v. Estate of Noel*, 380 U.S. 678 (1965), and *United States v. Rhode Island Hospital Trust Co.*, 355 F.2d 7 (1st Cir. 1966), to underline that includability of insurance proceeds under section 2042 does not depend on the practicality of decedent's being able to exercise a power. In *Noel*, the decedent purchased accident insurance on his life immediately before he embarked on an airplane which later crashed and caused his death. Under the terms of the two policies, the decedent had the power to change the beneficiary and to assign the policies although his wife had paid the premiums and was in physical possession of the policies. The Supreme Court held that the proceeds were includable in

decedent's gross estate since includability under section 2042(2) is determined by the existence of the power and not by the practical ability to exercise that power.

Smith, however, at his death, lacked not only the practical ability to exercise any power with respect to these two policies owned by the company, but also the existence of any power over them or any control over the company's decisions.

In *Rhode Island,* similarly, decedent actually possessed powers over an insurance policy on his life paid for and in the physical possession of his father. Included among the powers held by decedent was a negative power: his signature was needed for, among other things, a surrender for cash value. While decedent's feelings of duty to his father and the lack of physical possession of the policy may well have prevented him from exercising any of his powers, the court found their existence nevertheless caused the proceeds of the policy to be includable in the son's estate. Unlike in *Rhode Island,* Smith's signature was never required for a surrender for cash value. The employment contract, if anything, merely altered the party who would pay the cash values and take over the policies in the event the company decided to terminate them. Likewise, the instant case does not involve a practical impediment to the exercise of already-existent powers but powers only contingent at Smith's death.

Petitioner requests an award of reasonable attorney's fees as provided by section 2, Act of October 19, 1976, Pub. L. 94–559, 90 Stat. 2641, amending 42 U.S.C. sec. 1988. As we held in *Key Buick Co. v. Commissioner,*[4] 68 T.C. 178 (1977), on appeal (5th Cir., Aug. 15, 1977), however, this Court is not authorized under this law, or any other, to make such an award. We, therefore, need not decide whether this case would in fact merit the granting of attorney's fees.

*Decision will be entered under Rule 155.*

---

[4]Cf. *Aparacor, Inc. v. United States,* 215 Ct. Cl. 596, 571 F.2d 552 (1978); *Jacobsen v. United States,* an unreported case (W.D. Tex. 1978, 41 AFTR 2d 78–1070, 78–1 USTC par. 9323); *Richman v. United States,* 447 F. Supp. 929 (N.D. Ill. 1978); *Lieb v. United States,* 438 F. Supp. 1015 (E.D. Okla. 1977). Contra, *Levno v. United States,* 440 F. Supp. 8 (D. Mont. 1977).