ESTATE OF JAMES SMEAD, DECEASED, JOHN P. O'HARA, JR., EXECUTOR, PETITIONER v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2510–79.   Filed January 13, 1982.

John P. O'Hara, Jr., pro se.
*Richard A. Witkowski*, for the respondent.

PARKER, *Judge*: Respondent determined a deficiency in petitioner's Federal estate tax in the amount of $19,242.60 and an addition to tax under the provisions of section 6651(a)[1] in the amount of $917.98.

After concessions, the sole issue for decision is whether proceeds of an insurance policy on decedent's life are includable in his gross estate under section 2042(2).

### FINDINGS OF FACT

This case was submitted fully stipulated under Rule 122 of the Tax Court Rules of Practice and Procedure. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

---

[1]All section references are to the Internal Revenue Code of 1954 as amended and in effect during the year of decedent's death.

Petitioner John P. O'Hara, Jr., is the executor of the Estate of James R. Smead, deceased (decedent). He resided in Bloomfield Hills, Mich., at the time the petition in this case was filed. Decedent died on February 23, 1975. Petitioner filed the Federal estate tax return for decedent's estate on December 23, 1975.

At the time of his death, decedent was employed by Ford Motor Co. (Ford) as general sales manager for the Netherlands and was classified as a private salary roll employee. As a company-paid benefit, Ford contracted with John Hancock Mutual Life Insurance Co. to provide a supplemental survivor income benefit plan for eligible Ford employees. Decedent, as an eligible employee, was covered under that insurance policy number 18-G-SIB. The policy was delivered in Michigan and was governed by the laws of that State. The policy specified the beneficiaries of the policy, the amount they would be paid, the duration of the payments, and the manner in which the insurance proceeds would be paid.

The provisions of the policy could be amended only by agreement between the policyholder (Ford) and the insurance company. Decedent had no control over the designation of beneficiaries, the amount of benefits, the duration of the payments, or the manner in which the benefits were to be paid.

One of the provisions of the policy gave a covered employee, such as decedent, the right, upon termination of employment, to convert his group insurance into individual insurance without medical examination or other evidence of insurability.[2] Under the conversion privilege clause, the employee could

---

[2]The terms of the conversion privilege are as follows:

Section B(j). *Conversion Privilege*

If an employe ceases active work with the Employer and is eligible for continued insurance under this Policy after the end of the month in which he ceases active work, as provided in Section C hereof, his Supplemental Survivor Income Benefits shall remain in force under this Policy for

(a) the 31-day period following the end of the month for which the Employer pays the full premium for such continued Benefits, or

(b) if the employe is eligible to continue such Benefits for an additional period beyond such month by making premium contributions, as provided in Section C hereof, for the 31-day period after the end of the last month for which the required premium contribution is paid to and accepted by the Insurance Company,

except that such Benefits do not remain in force after the employe retires at or after age 55 under the Early, Special Early, Disability or Normal Retirement provisions of the

convert to any individual policy of life insurance then customarily issued by the insurer, except term insurance. To exercise the conversion privilege, the employee was required to make written application and the first premium payment during the 31-day period following termination of employment. The employee was required to. pay the full premium applicable to the class of risk to which he belonged. The maximum amount of insurance to which the employee could convert was the same as the amount of insurance under the group policy.

Policy number 18-G-SIB was silent as to an employee's right to assign any rights under the policy, including the conversion privilege. Decedent did not assign any of his rights under policy number 18-G-SIB.

Insurance policy number 18-G-SIB provided that the beneficiaries of the policy were "an eligible surviving spouse" and "eligible surviving children." As a result of decedent's death, his widow, Maryse M. Smead, and their minor child, Patrick Smead, were entitled to receive, and at this time are receiving, monthly supplemental survivor income benefit payments under the insurance policy. The commuted value of the proceeds payable to decedent's qualifying survivors as of the date of death was $132,956.59. At the time of his death, any right or interest of the decedent under policy number 18-G-SIB

---

Employer Retirement Plan or after the employe becomes age 65. However, if the employe retires as a regular, early or disability retiree prior to age 55, his Supplemental Survivor Income Benefits will remain in effect through the month in which he becomes age 55.

If an employe ceases active work with the Employer and is not eligible for continued insurance under this Policy after the date he ceases active work, as provided in Section C hereof, his Supplemental Survivor Income Benefits shall remain in force for 31 days following the employe's last day worked, but not after he becomes age 65.

During the applicable 31-day period specified above, the employe may convert, without medical examination, to any individual policy of Life Insurance then customarily issued by the Insurance Company, except term insurance, provided he makes written application and the first premium payment for the individual policy within the foregoing applicable 31-day period.

The premium for the individual policy will be that required by the class of risk to which the employe belongs, the form and amount of the individual policy, and the employe's attained age at its issue. The maximum amount of the individual policy to which the employe can convert shall be equal to value the employe's Supplemental Survivor Income Benefits as of the day before the 31-day period for converting. However, the individual policy may be in any lesser amount which the employe selects, but not less than $500.

Any individual policy issued pursuant to a conversion privilege granted by this provision shall become effective at the end of the 31-day period during which application for such individual policy may be made.

was community property of decedent and his wife under the laws of the Netherlands.

On the estate tax return, petitioner did not include any of the proceeds from insurance policy 18-G-SIB in decedent's gross estate. Respondent determined that the proceeds from the insurance policy were includable in the decedent's gross estate in accordance with section 2042(2) of the Internal Revenue Code because decedent possessed "incidents of ownership" in the policy. The amount includable was limited to $66,478 (one-half of the commuted value of the proceeds) since decedent's rights in the group policy were subject to the community property laws of the Netherlands.

### OPINION

The only issue presented for decision is whether the value of proceeds of a group life insurance policy which became payable on the decedent's death is includable in his gross estate under section 2042(2).[3]

The decision turns on whether the decedent "possessed at his death any of the incidents of ownership" with respect to the policy. Sec. 2042(2). The only right given to decedent by the policy was the right to convert the group policy into an individual policy at the time his employment with Ford terminated.[4] Petitioner argues that this conversion privilege is

---

[3]SEC. 2042. PROCEEDS OF LIFE INSURANCE.
The value of the gross estate shall include the value of all property—

    \*        \*        \*        \*        \*        \*

    (2) RECEIVABLE BY OTHER BENEFICIARIES.—To the extent of the amount receivable by all other beneficiaries as insurance under policies on the life of the decedent with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person. For purposes of the preceding sentence, the term "incident of ownership" includes a reversionary interest (whether arising by the express terms of the policy or other instrument or by operation of law) only if the value of such reversionary interest exceeded 5 percent of the value of the policy immediately before the death of the decedent. As used in this paragraph, the term "reversionary interest" includes a possibility that the policy, or the proceeds of the policy, may return to the decedent or his estate, or may be subject to a power of disposition by him. The value of a reversionary interest at any time shall be determined (without regard to the fact of the decedent's death) by usual methods of valuation, including the use of tables of mortality and actuarial principles, pursuant to regulations prescribed by the Secretary or his delegate. In determining the value of a possibility that the policy or proceeds thereof may be subject to a power of disposition by the decedent, such possibility shall be valued as if it were a possibility that such policy or proceeds may return to the decedent or his estate.

[4]The conversion privilege was also required under Michigan State law. See Mich. Comp. Laws sec. 500.4438 (Mich. Stat. Ann. sec. 24.14438 (Callaghan 1972)), which provides:

not an "incident of ownership" because it is a contingent right that decedent could exercise only by quitting his job. Respondent urges us to hold that the conversion privilege is an "incident of ownership."[5] We agree with petitioner.

Although various courts have considered what is included in the phrase "incidents of ownership," the issue of whether a conversion privilege in a group life insurance policy falls within that term has never been decided.[6] The pertinent statutory provision, section 2042(2), does not define "incidents of ownership." Section 20.2042–1(c)(2) of the Estate Tax Regulations provides in part:

> For purposes of this paragraph, the term "incidents of ownership" is not limited in its meaning to ownership of the policy in the technical legal sense. Generally speaking, the term has reference to the right of the insured or his estate to the economic benefits of the policy. Thus, it includes the power to change the beneficiary, to surrender or cancel the policy, to assign the policy, to revoke an assignment, to pledge the policy for a loan, or to obtain from the insurer a loan against the surrender value of the policy, etc. * * *

This regulation is simply a rearrangement of some examples given in the committee reports accompanying section 404 of the Revenue Act of 1942, which was the predecessor of section 2042(2). Those committee reports, however, introduced that

---

[Group Life Policy; individual certificate to employe; termination of employment, issuance of insurance.] SEC. 4438. There shall be a provision that the company will issue to the employer for delivery to the employe, whose life is insured under such policy, an individual certificate setting forth a statement as to the insurance protection to which he is entitled, to whom payable, together with provision to the effect that in case of the termination of the employment for any reason whatsoever the employe shall be entitled to have issued to him by the company, without further evidence of insurability, and upon application made to the company within 31 days after such termination, and upon the payment of the premium applicable to the class of risk to which he belongs and to the form and amount of the policy at his then attained age, a policy of life insurance in any 1 of the forms customarily issued by the company, except term insurance, in an amount equal to the amount of his protection under such group insurance policy at the time of such termination.

Some 39 States have a similar requirement in their insurance laws.

[5]Respondent has published his position in situation 2 of Rev. Rul. 69–54, 1969–1 C.B. 221. Revenue rulings, however, do not have the force of law and are merely the contention of one of the parties to the litigation. *Stubbs, Overbeck & Associates v. United States*, 445 F.2d 1142, 1146–1147 (5th Cir. 1971); *Estate of Lang v. Commissioner*, 64 T.C. 404, 406–407 (1975), affd. on this point 613 F.2d 770, 776 (9th Cir. 1980). For a discussion of the differences between a revenue ruling and a regulation, see the concurring opinion in *Browne v. Commissioner*, 73 T.C. 723, 730–731 (1980).

[6]In *Estate of Gorby v. Commissioner*, 53 T.C. 80 (1969), we pretermitted the question. In *Estate of Lumpkin v. Commissioner*, 56 T.C. 815, 826 (1971), revd. 474 F.2d 1092 (5th Cir. 1973), we also determined that it was unnecessary to reach the issue.

listing of examples with the explanation that "There is no specific enumeration of incidents of ownership, the possession of which at death forms the basis for inclusion of insurance proceeds in the gross estate, as it is impossible to include an exhaustive list."[7] Thus, the failure to list the conversion privilege in the regulations or the committee reports as an example of an incident of ownership is not determinative.

In determining whether the decedent possessed incidents of ownership with respect to the policy, the relevant question is whether decedent had the capacity to do something to affect the disposition of the proceeds if he had so wanted. *United States v. Rhode Island Hospital Trust Co.*, 355 F.2d 7, 11 (1st Cir. 1966). As that case points out, however, we must look primarily to the "policy facts" (the rights given in the insurance contract) rather than the "intent facts" (the insured's subjective intentions) in making that determination.[8] And we must also keep in mind that "The very phrase 'incidents of ownership' connotes something partial, minor, or even fractional in its scope. It speaks more of possibility than of probability." 355 F.2d at 10. It is the existence of even a "fractional" power, not the probability of its exercise, that controls. *Schwager v. Commissioner*, 64 T.C. 781, 791 (1975). Some of the "fractional" powers not listed in the pertinent estate tax regulations that have been held to constitute an "incident of ownership" include the power to prevent a change of beneficiary by withholding his written consent (*Schwager v. Commissioner, supra*) and the power to select an optional mode of settlement and thereby vary the time and manner in which the insurance proceeds will be paid (*Estate of Lumpkin v. Commissioner*, 474 F.2d 1092 (5th Cir. 1973), revg. 56 T.C. 815 (1971); but compare *Estate of Connelly v. United States*, 551 F.2d 545 (3d Cir. 1977)).

However, if the "fractional" power possessed by the insured is contingent upon an event over which the insured has no

---

[7] H. Rept. 2333, 77th Cong., 1st Sess. 163 (1942), 1942–2 C.B. 372, 491; S. Rept. 1631, 77th Cong., 2d Sess. 235 (1942), 1942–2 C.B. 504, 677.

[8] Of course, a strict application of the so-called policy facts doctrine may be inappropriate in a case where the terms of the insurance policy have been impacted by the terms of a property settlement agreement and a State court order in such a fashion that the policy rights are effectively removed from the insured. See *Estate of Beauregard v. Commissioner*, 74 T.C. 603 (1980).

control, it does not constitute an incident of ownership in the policy. *Estate of Smith v. Commissioner*, 73 T.C. 307 (1979). In *Smith*, the insured was given the right, in the event the employer stopped paying the premiums, to prevent cancellation of a policy on his life by purchasing the policy from his employer for the policy's cash surrender value. We held that decedent did not possess any incidents of ownership with respect to the insurance policy, because any rights he may have had were contingent upon an event over which he had no control. Similarly, in *Estate of Beauregard v. Commissioner*, 74 T.C. 603 (1980), any power the insured might have possessed under the terms of the policy to change beneficiaries had been effectively removed under local law by the property settlement agreement and local court order directing the insured to name his minor children as his beneficiaries. We held that the insured possessed no incident of ownership in the policy at the time of his death. We so held even though there was a possibility, once the children reached their majority or upon the occurrence of other specified events, that the insured might regain the right to name beneficiaries under the policy. That contingency of course had not occurred at the time of the insured's death. In both *Smith* and *Beauregard*, the insured's purported rights in the policy were entirely too contingent or remote to constitute incidents of ownership possessed by the decedent at the time of his death. It is in this context that we must consider the right of decedent here to convert his group policy into an individual policy upon termination of his employment.

We start from the premise that there is no incident of ownership where the insured has only the right to be covered by insurance, with the proceeds payable to a beneficiary selected by the employer. *Estate of Beauregard v. Commissioner*, 74 T.C. at 608. The only right decedent had was the right, given by the policy and by local State law, to convert his group policy to an individual insurance policy.[9] That right was thus

---

[9]Although the group policy was silent as to decedent's right to assign any rights under the group policy, including the conversion privilege, the Michigan State law gave him the right to assign:

Mich. Comp. Laws sec. 500.4439 (Mich. Stat. Ann. sec. 24.14439 (Callaghan 1972)). [Group Life Policy; assignment of rights; validity; effect; intent of section.] SEC. 4439. A person

contingent upon the termination of his employment. Termination could occur either at the complete discretion of his employer or by decedent's voluntary action. Decedent had no control over the former, but he did control the voluntary termination of his employment. Petitioner argues, however, that decedent did not possess at his death any incident of ownership because he did not possess an immediately exercisable right to convert and that all decedent possessed at death was a "contingent option to purchase insurance." Petitioner further argues that the contingency decedent did control, voluntary termination of his employment, is an act so detrimental to the insured because of the potential adverse economic consequences that it is not the type of right that warrants inclusion of insurance proceeds in decedent's gross estate. We agree.

This same argument has been made before in a similar context involving the right to surrender or cancel an insurance policy. The right to surrender or cancel an insurance policy is, in both the legislative history of the predecessor of section 2042(2) and in the pertinent estate tax regulations,

whose life is insured under a group insurance policy may, subject and pursuant to the terms of the policy, or pursuant to an arrangement between the insured, the employer and the company, assign (other than to the employer) all or any part of his incidents of ownership, rights, title and interests, both present and future, under such policy including specifically, but not by way of limitation, the right to designate and redesignate a beneficiary or beneficiaries thereunder, the right to make any requisite contributions to maintain the insurance in force, and the right to have an individual policy issued to him in case of termination of employment. Such an assignment by the insured, made either before or after the effective date hereof, is valid for the purpose of vesting in the assignee, in accordance with any provisions included therein as to the time at which it is to be effective, all of such incidents of ownership, rights, title and interests so assigned, but without prejudice to the company on account of any payment it may make or individual policy it may issue prior to receipt of notice of the assignment. This section is not intended to alter the law of this state but is intended only to confirm in express statutory form the law as it exists presently.

Respondent no doubt agrees that decedent had the right to assign, and would agree that if decedent had made an irrevocable assignment of all his incidents of ownership in the group policy, including the conversion privilege, the insurance proceeds would not be includable in his gross estate. See situation 2 of Rev. Rul. 69–54, 1969–1 C.B. 221. Decedent did not make any assignment in this case.

While the right to assign is an incident of ownership (sec. 20.2042–1(c)(2), Estate Tax Regs.), that feature alone is not sufficient for inclusion in decedent's gross estate in this case. The right to assign rights under a policy constitutes a substantive incident of ownership only if one or more of the rights which may be assigned constitute incidents of ownership. Thus, if the conversion privilege was not an incident of ownership, the right to assign it would not be an incident of ownership, either. See Estate of Lumpkin v. Commissioner, 56 T.C. 815, 828 (1971), revd. on other grounds 474 F.2d 1092 (5th Cir. 1973).

plainly stated to be an incident of ownership. However, where the only way the insured can surrender or cancel a policy is by quitting his job, that is not considered to be an incident of ownership. While respondent at one time argued that the right to quit one's job and thereby effect cancellation of a group life insurance policy was an incident of ownership possessed by the insured,[10] the courts did not agree and respondent has since changed his position in that regard. *Estate of Beauregard v. Commissioner, supra* at 608; *Estate of Lumpkin v. Commissioner, supra* at 825, revd. on other grounds 474 F.2d 1092 (5th Cir. 1973); *Landorf v. United States*, 187 Ct. Cl. 99, 408 F.2d 461 (1969); Rev. Rul. 72–307, 1972–1 C.B. 307, modifying situation 1 in Rev. Rul. 69–54, 1969–1 C.B. 222.

In *Landorf v. United States, supra*, the Court of Claims held that a decedent's right to cancel an insurance policy by terminating his employment was not an incident of ownership within the meaning of section 2042(2). The court stated "we do not believe that Congress intended to include the power to terminate employment, a right which everyone can exercise at any time, to be an 'incident of ownership' in property simply because the property involved is somehow related to the employment." 187 Ct. Cl. at 112, 408 F.2d at 469.

Respondent has also recognized that an insured's "power to cancel his insurance coverage by terminating his employment is a collateral consequence of the power that every employee has to terminate his employment" and has ruled that possession of that power does not require inclusion of life insurance proceeds in the insured's gross estate. Rev. Rul. 72–307, 1972–1 C.B. 307, 308. The ruling contrasts termination of employment with the examples of incidents of ownership in section 20.2042–1(c)(2) of the Estate Tax Regulations that concern powers that "directly affect the insurance policy or the payment of its proceeds *without potentially costly related consequences.*" (Emphasis added.) Termination of employment carries with it potentially adverse economic consequences. Respondent now agrees that where the power to cancel an insurance policy is exercisable only by terminating employment, it is not deemed to be an incident of ownership in the

---

[10]See *Commissioner v. Treganowan*, 183 F.2d 288, 293 (2d Cir. 1950), revg. 13 T.C. 159 (1949), and situation 1 in Rev. Rul. 69–54, 1969–1 C.B. 221.

policy. Yet respondent argues here that the power to exercise a conversion privilege, which is exercisable only by terminating employment, should be treated as an incident of ownership in the policy. We disagree.

Respondent would have us distinguish Rev. Rul. 72–307, because it deals strictly with the power to cancel insurance by terminating employment. We are not willing to draw that distinction. With respect to cancellation of insurance, respondent has conceded that a power that would otherwise unquestionably be considered a taxable incident of ownership (the power to cancel insurance) does not so qualify where the power can only be exercised by quitting one's job. If quitting one's job is too high a price to pay for the right to cancel an insurance policy, it is likewise too high a price to pay for the right to convert to another policy.

Assuming that the conversion privilege can ever be a power that directly affects the group insurance policy or the payment of its proceeds, i.e., the type of power that respondent considers to be an incident of ownership in the group policy, the conversion privilege can only be exercised by termination of one's employment. We think that such voluntary termination of employment, the only power within the control of the decedent in this case, cannot be said to be "without potentially costly related consequences." We conclude that the conversion privilege that decedent could exercise or control only by quitting his job was entirely too contingent and too remote to be considered an incident of ownership possessed by the decedent at the time of his death. *Estate of Smith v. Commissioner, supra; Estate of Beauregard v. Commissioner, supra.* Therefore, the proceeds of the group life insurance policy are not properly includable in decedent's gross estate under section 2042(2).

To reflect the concessions,

*Decision will be entered under Rule 155.*