[L. A. No. 24380.   In Bank.   Feb. 25, 1958.]

T. A. HALLDIN, Appellant, v. WILLIAM A. USHER et al.,
Defendants; MAY L. ERICKSON et al., Respondents.

Macbeth & Ford and Patrick H. Ford for Appellant.

Nicolas Ferrara for Respondents.

SHENK J.—This is an appeal by the plaintiff T. A. Halldin from a judgment for the defendants in an action for declaratory relief. In Count I the plaintiff sought a declaration that a certain document is a valid contract imposing a trust on two parcels of realty and on the proceeds from the sale of another parcel in favor of himself and others. No appeal was taken as to that portion of the judgment which denied other relief sought by the plaintiff in a second count and awarding damages to certain of the defendants on a cross-complaint.

The plaintiff and the defendants Raymond Halldin, Dexter Halldin and Ruth Halldin are the children of the defendant May L. Erickson and the deceased K. Henry Halldin. In 1945 when Mrs. Erickson was 71 years of age, she and K. Henry Halldin, then husband and wife, executed an instrument which provided as follows:

"July 5, 1945

"K. Henry Halldin and wife May L. Halldin herewith agree that in case of the death the one that survives shall have whole control of our property.

"We also state that when both of us are gone. The property 1041, 1043-1043½ at Magnolia Ave., Los Angeles shall in equal parts go to our children. But property 1236 Ritos Vitas Ave. Los Angeles and the lot in San Clemente go to our son T. A. Halldin as his special share besides his share in the Magnolia Ave. property.

K. Henry Halldin
May L. Halldin

Subscribed and sworn to before me
this 5th day of July 1945
Harry Christensen
Notary Public in and for the County
of Los Angeles. . . ."

The document is in the handwriting of Mr. Halldin except for the signature "May L. Halldin" and the notary's jurat.

In 1947 Mr. Halldin died, leaving as survivors the above mentioned children and his wife. Thereafter the widow remarried and became May L. Erickson. In 1955 she sold the Magnolia Avenue property to the defendants Usher and the plaintiff thereupon brought this suit, claiming that the instru-

ment of July 5, 1945, was a contract between his parents for the benefit of himself and the other children, and sought declaratory relief to that effect as well as to other matters alleged but not in issue on this appeal. The trial court found that the instrument of July 5, 1945, was intended as a testamentary disposition and not an enforceable contract, and that the plaintiff and the other children acquired no rights thereunder. It was also found that the defendants Usher were bona fide purchasers for value. On these and other findings judgment was rendered against the plaintiff on both counts of the complaint and on the cross-complaint. The only questions on appeal concern the issue raised in Count I, namely, the construction of the above quoted document as a contract or as a testamentary instrument.

The plaintiff contends that a written agreement between a husband and wife purporting to govern the disposition of their property on death is a valid contract; that it is not testamentary in effect; that equity will enforce a contract to transfer future interests without a present operative transfer, and that an implied covenant to make a will is created by law whenever necessary to complete the performance of a contract. But these contentions are of no avail unless it can first be shown that the document executed by the decedent and his wife constituted a contract. As to that issue the trial court admitted parol evidence of the intent of the subscribing parties with reference to the purpose of the document. Such evidence consisted in the main of testimony by Mrs. Erickson concerning conversations with her then husband to the effect that the instrument was to be effective only on death and that it was intended as a will. Findings were made from which the court concluded that the document was intended as a testamentary instrument and not as a third party beneficiary contract. These conclusions are supported by substantial evidence and are controlling on the record presented. The plaintiff contends, however, that parol evidence was improperly admitted and that the intention of the parties as to the document is to be ascertained from the document itself, citing section 1638 of the Civil Code providing that the "language of a contract is to govern its interpretation . . ." and section 1636 providing that a contract "must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable. . . ." (See also *Estate of Gaines*, 15 Cal.2d 255, 264-265 [100 P.2d 1055].)

■ The rule of law to which the plaintiff refers has to do with the ascertainment of the meaning of the terms of a document where those terms are free from ambiguity. (*Brant* v. *California Dairies, Inc.*, 4 Cal.2d 128, 133-134 [48 P.2d 13].) But the rule is otherwise as to the admission of parol evidence for the purpose of ascertaining whether a document claimed to be a contract was not intended by the parties to have that effect. ■ The rule is stated with supporting authorities in 20 American Jurisprudence at page 955 as follows: "The rule that parol evidence is inadmissible to contradict or vary a written contract applies only to a written contract which is in force as a binding obligation. Parol evidence is always competent to show the nonexistence of the contract. . . . Evidence is admissible, at least in equity, to show that a writing which apparently constituted a contract was not intended or understood by either party to be binding as such. The oral testimony in such a case does not vary the terms of the writing, but shows that it was never intended to be a contract or to be of binding force between the parties." (See also 18 Cal.Jur.2d 756-758.) The rule was applied in *P. A. Smith Co.* v. *Muller*, 201 Cal. 219, where it was said at page 222 [256 P. 411]: "It is well settled by the decisions in many jurisdictions that evidence that parties never intended a writing to constitute a contract . . . is not objectionable under the parol evidence rule. Such evidence does not change a written contract by parol, but serves to establish that such contract had no force, efficacy, or effect." The same principle of law was applied as to a document which purported to be a testamentary disposition in *Estate of Sargavak*, 35 Cal.2d 93, where the court stated at page 96 [216 P.2d 850, 21 A.L.R.2d 307]: "Regardless of the language of the allegedly testamentary instrument, extrinsic evidence may be introduced to show that it was not intended by the testator to be effective as a will."

■ The question of the intention of the parties as to the effect of the instrument as a contract or as a testamentary instrument is a question of fact. (*Michels* v. *Olmstead*, 157 U.S. 198 [15 S.Ct. 580, 39 L.Ed. 671].) As stated, there was substantial and admissible parol evidence to the effect that the instrument was to be effective only on death and that it was intended to be a will.

■ Even if the document were a contract, as the plaintiff contends, he must further show that it is clear and unambiguous in order to justify his contention that parol

evidence of its meaning was improperly admitted. He contends that by the language "in case of death the one that survives shall have whole control of our property," the parties intended by the use of such language that the survivor would have only a limited power to oversee and manage the property for the benefit of the children. Cases in other jurisdictions are cited by him to the effect that if it had been the intention of the parties to transfer a fee interest more apt language would have been used. On the other hand, in *Barnett* v. *Barnett,* 117 Md. 265 [83 A. 160, 162, Ann.Cas 1913E 1284], it was held that the words "absolute control" transferred a fee interest, and in *Welsh* v. *Gist,* 101 Md. 606 [61 A. 665], it was held that the words "full control" also vested a fee interest. Accordingly it would seem that the words "whole control" in the present document are not so free from ambiguity as to prevent the court from resorting to extrinsic evidence to ascertain their meaning. That evidence clearly indicates as found by the court that it was not the intention of the parties to leave the survivor destitute and without means of support as might be the case if the construction urged by the plaintiff were adopted.

The judgment is affirmed.

Gibson, C. J., Carter, J., Traynor, J., Schauer, J., Spence, J., and McComb, J., concurred.

Appellant's petition for a rehearing was denied March 26, 1958.