[Civ. No. 31868.   Second Dist., Div. Five.   Aug. 13, 1968.]

CAROLINE Z. GREENBERG, Plaintiff and Appellant, v. CLARICE KAUFMAN GREENBERG et al., Defendants and Respondents.

Hill, Farrer & Burrill, Kurilich, Slack & Ballard and Cecil E. Ricks, Jr., for Plaintiff and Appellant.

Hillel Chodos for Defendants and Respondents.

KAUS, P. J.—This is a judgment roll appeal. ■ The only contention is that the conclusions of law and the judgment entered pursuant thereto, are not supported by the findings of fact. We disagree. The following is a summary of facts: Plaintiff, Caroline, is the first wife, defendant, Clarice, is the widow of Joseph Greenberg who died in 1962. Defend-

ant Gregg is the child of the marriage between Clarice and Joseph. Joseph and Caroline were divorced on November 6, 1945. Part of the property settlement agreement was a promise by Joseph to Caroline to make her the irrevocable beneficiary of about $36,000 worth of life insurance ''as long as you do not remarry.''[1] Caroline never remarried. At the time of the agreement there was in effect somewhere between $80,000 and $130,000 worth of life insurance, represented by seven or eight policies. At the time of Joseph's death only six policies were in effect, the face amount of which totalled $58,000.

Joseph never promised to make Caroline the irrevocable[2] beneficiary of any particular policy or policies. What promise he made, he did not keep.

Joseph married Clarice, the defendant, on November 9, 1945.[3] Shortly thereafter he became ill and for substantial periods before his death was unable to contribute significantly to the family income, which was principally supplied by Clarice.

In 1955 Joseph borrowed $21,150 from a bank. He secured the loan with four of the six policies. The terms of the loan were that if he failed to make interest payments when due or failed to maintain the four policies in force, the bank had the right to surrender them for their cash value and apply the proceeds to the loan. The amount of the loan was equal to the maximum amount which could be secured by the cash value of the four policies.

In 1957 Joseph was hospitalized and unable to make either the interest or premium payments. He explained the situation to Clarice and told her that if she wanted to, she could keep the loan and the policies current and in force and that if she did do so he would designate either her, or their son Gregg, as beneficiary, subject, of course, to the claim of the bank. Clarice accepted the offer and made the interest and premium payments on all six policies in issue. Joseph thereupon designated Clarice as the beneficiary of four policies. With respect to one policy she had been the beneficiary since 1953. Joseph designated Gregg as the beneficiary of the sixth policy.

[1] All rights asserted by Caroline stem from this agreement. She makes no claim which derives from any premium payments out of community property.

[2] The precise finding is that Joseph ''never promised plaintiff . . . that he would make her the beneficiary of any particular policy or policies . . .'' She already was the beneficiary. What promises Joseph did make were directed toward divesting himself of the power to change beneficiaries.

[3] His divorce had been granted in Nevada.

When Clarice made the agreement with Joseph she did not know or have notice of his 1945 promise to plaintiff. She would not have made the agreement, or made the interest or premium payments thereafter had she known of Caroline's claim. Caroline never did anything to assert her claim during Joseph's lifetime.

Clarice made the interest and premium payments until Joseph's death. Thereafter the insurance companies involved, by agreement between the parties, discharged the bank loan and deposited the remainder, almost exactly $36,000, with the clerk of the superior court.

From these facts the court concluded:

1. That Joseph had made a "valid and enforceable agreement" with Caroline who thereby "acquired a vested right to $36,000.00 worth of insurance with her as irrevocable beneficiary."

2. Caroline's claim was not barred by various affirmative defenses raised by Clarice and Gregg.

3. "Defendants became the beneficiaries of the six policies . . . not as donee beneficiaries, but as bona fide purchasers of the said proceeds for full and adequate consideration, and without knowledge or notice of plaintiff's claims; and defendants' rights to the proceeds are not subject to any trust in favor of plaintiff . . ."

We think that the conclusions follow from the facts as night follows day. Caroline, of course, appears to have a perfectly valid claim against Joseph's estate. As between herself and Joseph, Joseph was bound in law and equity to keep his 1945 promise. Her problem is that in the meantime Clarice and her designee Gregg, without any knowledge of Caroline's rights had acquired a good legal title to the proceeds of the policies. We do not see where the situation differs, in principle, from any other case where equitable rights are cut off in favor of a bona fide purchaser.

Caroline claims that the vested right to $36,000 worth of insurance which she acquired by virtue of her 1945 agreement with Joseph cannot be defeated without her consent. She further claims that even if defendants are regarded as bona fide purchasers the equitable maxim "first in time, first in right" is applicable and defeats defendants' claims. She relies on two cases, *Shoudy* v. *Shoudy*, 55 Cal.App. 344 [203 P. 433] and *Chilwell* v. *Chilwell*, 40 Cal.App.2d 550 [105 P.2d 122]. Neither supports her contentions.

*Shoudy* also involved a contest over insurance between a

divorced wife and a widow. The court found that when Mr. Shoudy, in anticipation of a divorce from his first wife, offered as part of a property settlement agreement to keep certain insurance policies in effect for her for as long as she remained single, ". . . her interest as a beneficiary in said policies became changed from that of a mere expectancy to a more fixed and permanent relation. She had thenceforth an equitable interest in said policies of which she could not be divested by the mere act of the insured in changing the name of the beneficiary. . . . [S]he could not be deprived by any act of the insured in the way of an attempted substitution of the name of *a merely voluntary beneficiary* in the place and stead of her name in said policies. . . ." (*Ibid.,* pp. 351-352. Italics added.)

The court in *Shoudy* further found that Shoudy's widow was a donee beneficiary. "It was also an entirely voluntary act on his part for which there was no consideration moving from anyone and regarding which there was neither agreement, compulsion, or knowledge on the part of this defendant [the second Mrs. Shoudy]." (*Ibid.,* p. 353.)

Precisely the opposite situation prevails in the instant case. Defendants' rights derive from the 1957 contract between Clarice and Joseph and they prevailed below because they were found to be bona fide purchasers with respect to that contract.

In *Jory* v. *Supreme Council A.L.H.,* 105 Cal. 20, 28 [38 P. 524], the Supreme Court said, in discussing the so-called "vested" rights of a claimant such as plaintiff herein: "Possibly this is not a correct declaration of the principle of law applicable to the conditions; for a second beneficiary might be substituted, wholly innocent of the contractual relations existing between the insured and the first beneficiary, and his substitution give rise to the creation of equities in his behalf, all controlling upon a judicial disposition of the rights of the parties concerned."

Defendants herein are precisely such second beneficiaries.

*Chilwell* v. *Chilwell, supra,* deals with a contest over insurance proceeds between children of the decedent's first marriage and his widow. A property settlement between the decedent and his first wife called for decedent to procure insurance and maintain the parties' children as beneficiaries thereof. The children prevailed, but again the widow had

given no consideration. *Chilwell,* therefore, is inapposite vis-a-vis the status of the present defendants. *Chilwell* is in point, however, on a further issue raised by plaintiff: that even if Clarice is a bona fide purchaser, Gregg is merely a donee beneficiary. Gregg, however, is, as were the children in *Chilwell,* the third party beneficiary of an enforceable contract made by his parents for his benefit. As such he can enforce the contract in the same manner as a party thereto. (*Reliance Life Ins. Co.* v. *Jaffe,* 121 Cal.App.2d 241 [263 P.2d 82]; *Waxman* v. *Citizens Nat. Trust & Sav. Bank,* 123 Cal.App.2d 145 [266 P.2d 48].)

Following filing of briefs herein, plaintiff's counsel drew the attention of this court to *Cramer* v. *Biddison,* 257 Cal. App.2d 720 [65 Cal.Rptr. 624] wherein the court overturned a ruling sustaining a general demurrer to a complaint brought by a former wife against the decedent's executors. The former wife's claim for insurance proceeds was based on a divorce judgment awarding a right to such proceeds. The case is not in point, however. As we read the case it is distinguishable for two reasons: 1. the only point involved is one of pleading. The court carefully points out that the former wife may well have to prove that the judgment gave her rights to a particular policy or policies; and 2. the defendants were the executors of the husband's estate, who stood in his shoes.

At the oral argument plaintiff's counsel requested and was given permission to file additional authorities in support of Caroline's position. By letter he refers us to *Mutual Life Ins. Co.* v. *Franck,* 9 Cal.App.2d 528 [50 P.2d 480]. That case, too, is easily distinguishable. The facts are similar to those in *Shoudy* v. *Shoudy, supra,* with one exception: at one point, before the deceased wrongfully named his second wife as the beneficiary on the policy in question he had borrowed $348.80 from her to pay the annual premium on the policy. The trial court gave judgment in favor of his first wife, who had a right to the proceeds by virtue of a property settlement agreement and a divorce judgment, but allowed the widow reimbursement in the sum of $348.80. The widow appealed and the judgment was affirmed. Caroline now claims that a proper result of the case at bar would have been to allow Clarice reimbursement for the premiums she has paid, but to award the remaining balance to Caroline.

Since in *Mutual Life Ins. Co.* v. *Franck, supra,* no one has attacked the portion of the judgment allowing the reimburse-

ment, the court was not called upon to give a reason for its propriety. Nor can we think of one.

The judgment is affirmed.

Stephens, J., and Moor, J. pro tem.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 3, 1968.

---

*Assigned by the Chairman of the Judicial Council.