Estate of Theodore E. Beauregard, Jr., Deceased, Theodore E. Beauregard III and Yvonne Marie B. Beauregard, Special Administrators, Petitioners *v.* Commissioner of Internal Revenue, Respondent

Docket No. 11163–77.     Filed June 26, 1980.

*Melvyn Mason,* for the petitioner.
*Karl D. Zufelt,* for the respondent.

OPINION

Nims, *Judge:* Respondent has determined an estate tax deficiency of $25,182.62. Because of a concession made by petitioners, the sole remaining issue for our determination is whether the proceeds of a travel accident policy under which the decedent was a "covered person" are includable in his gross estate.

The facts in this case were fully stipulated. The stipulation of facts and attached exhibits are incorporated herein by reference.

Theodore E. Beauregard III and Yvonne Marie Beauregard, who, as the fiduciaries of the decedent's estate, are the

petitioners herein, resided in Woodland Hills, Calif., at the time the petition was filed. There being no last will and testament, they were appointed special administrators of the decedent's estate by order of the Superior Court of California, San Mateo County, on March 7, 1978.

The decedent, Theodore E. Beauregard, Jr. (Beauregard), died on November 20, 1973, leaving as his heirs his 16-year-old son, the aforementioned Theodore E. Beauregard III, and his 15-year-old daughter, the aforementioned Yvonne Marie Beauregard.

Beauregard commenced employment with Hazeltine Corp. (Hazeltine) in 1972 and worked continuously for Hazeltine thereafter until his death.

Hazeltine, as policyholder, acquired and maintained a Business Travel Accident Insurance Policy (the policy), issued by the Home Insurance Co. (Home Co.). The policy provided for the payment of certain benefits, in amounts of up to $125,000, to any covered person who sustained injury or loss of life while on Hazeltine business and during the course of any bona fide trip. Beauregard suffered a fatal automobile accident on such a trip. The term "Covered Person" as used in the policy included "All employees of the Policy Holder under 70 years of age, except truck drivers and their helpers." Beauregard was a covered person within this definition.

All premiums due on the policy were paid by Hazeltine.

Under the policy, certificates of insurance were not required to be, nor were they, delivered to any employee. All employees received a booklet which contained, among other things, two pages purporting to include "*the* various important facts" which employees of Hazeltine "should know about this additional coverage," i.e., coverage under the policy. (Emphasis supplied.)

Regarding the right to designate a beneficiary, the booklet stated that "In the event of your death, the benefit is payable to the beneficiary named by you for purposes of your group life insurance described at page 26."

The policy, on the other hand, provided that—

The right of designation or change of beneficiary is reserved to the Covered Person and the consent of the beneficiary or beneficiaries shall not be requisite to surrender or assignment of the insurance coverage with respect to which the beneficiary designation has been made or to any change of beneficiary or beneficiaries * * *

The booklet also did not advise employees of their right to

elect installment payments of the proceeds rather than a lump-sum payment, although the policy further provided that the covered person had the right to direct that the policy benefits be paid to the beneficiaries in installments, including interest, over a 3-, 5-, or 10-year period, in accordance with a formula set forth in the policy, in lieu of payment in a lump sum. At no time did Beauregard exercise any right with respect to a mode of payment.

The policy further provided that—

If the covered person has elected monthly installment payments under this policy and the beneficiary shall die before the payment of all of the monthly installments to which entitled, the commuted value of any remaining monthly installments, at the rate of interest used to determine such installments, will be paid in one sum to the estate of the deceased beneficiary, unless the Covered Person has designated otherwise.

The policy further provided, by an endorsement dated September 13, 1971, that if, at the death of a covered person, no beneficiary had been effectively designated, then the benefits payable would be paid to the persons who were the beneficiaries under a separate and distinct group life insurance policy maintained by Hazeltine for the benefit of its employees. The separate group life insurance policy provided that an employee could at any time name or change beneficiaries. At the time of his death, Beauregard had designated his children, Theodore E. Beauregard III and Yvonne Marie Beauregard, as the beneficiaries of such other group life insurance policy.

In the booklet page dealing with accident coverage, the employees were nowhere referred to the policy itself for a more complete statement of their benefits and rights under the policy.

The policy provided that Hazeltine could at any time cancel the policy, which cancellation would be effective upon receipt of such notice of cancellation by Home Co.

An interlocutory judgment of dissolution of marriage (the court order) between Beauregard and his then spouse, Suzanne, was entered on July 6, 1972, and became final on September 26, 1972. The court order provided that both Suzanne and Beauregard "shall maintain the minor children as beneficiaries in connection with any group accident and health policies available to them in connection with their employment." The court order recited that a property settlement agreement dated May 21,

1972, was received in evidence and the court order entered pursuant thereto.

The above provisions relating to group accident and health policies appear under paragraph "2" of the court order which deals generally with the support of Beauregard's minor children until such time as they marry, reach 21 years of age, become self-supporting, or leave the custody of their mother.

Following the death of Beauregard, Home Co. paid, under the policy, the sum of $125,000, equally divided, to Beauregard's two above-named children.

On Schedule D of the estate tax return, the fiduciaries reported, as an includable asset, the $40,000 proceeds of the Hazeltine group life policy coverage on Beauregard's life. In addition, Schedule D reflects the following:

THE FOLLOWING IS NOT INCLUDABLE:

Receipt of $125,000 pursuant to an accidental death policy maintained by deceased's employer for employees as a class.

Petitioners' contentions are essentially threefold, as follows:

1. Beauregard did not possess any rights in the Policy by reason of the fact that it was unilaterally cancellable at any time by Hazeltine;

2. Beauregard's rights were limited to those set forth in the Employee Booklet and since, under the terms of the Employee Booklet, Hazeltine decreed that the beneficiary of the benefit would be the person named by Beauregard for purposes of his group life insurance, he was thereby required to forego his right to elect under the Policy without costly related consequences which, petitioners say, is not an incident of ownership within the intendment of section 2042(2).[1]

3. At the time of his death Beauregard was subject to both a Property Settlement Agreement and a Court Order which ordered him to maintain his children as the beneficiaries of the Policy, thereby effectively removing from him the right to designate a beneficiary.

Respondent counters with the argument that the terms of the policy reserved to Beauregard, exclusively, the right to designate or change beneficiaries and the right to elect optional settlement modes. The respondent apparently concedes, however, as stated in the "Points Relied Upon" section of his opening brief, that "The decedent's power to name beneficiaries was, however, limited by the terms of an Interlocutory Judgment of

---

[1] All statutory references are to the Internal Revenue Code of 1954, as in effect during the year in issue, except as otherwise expressly indicated.

Dissolution of Marriage which required that he maintain his minor children as beneficiaries of the policy." Respondent's argument on brief and reply brief is predicated upon this limiting condition. Respondent contends that Beauregard, nevertheless, had the power within the strictures of the court's judgment to modify the time and manner of payment of the policy proceeds; that the terms of the court order required only that the policy's benefits be paid to his children until they gained their majority; and that Beauregard was free to designate beneficiaries to receive the benefits after such period.

Both parties to this controversy thus appear to proceed upon the tacit assumption that a strict application of the so-called "policy facts" doctrine is here inappropriate and we accordingly accept the case in this posture and reach our decision on this basis.[2] Clearly, the provisions of the policy included powers which, if "possessed" by the decedent at his death (sec. 2042(2)), fall squarely within the term "incidents of ownership" as defined in the estate tax regulations.[3] The policy granted the insured the right of designation or change of beneficiary and the right to direct the payment of the policy benefits in installments rather than in a lump sum.

Did Beauregard possess at his death any of the above (or any

---

[2]But see, for example, *Commissioner v. Noel's Estate*, 380 U.S. 678, 85 S. Ct. 1238 (1965) (flight insurance proceeds held includable in gross estate even though insured had no opportunity to exercise incidents of ownership; decedent "gave" policy to spouse at the airport); *Nance v. United States*, 430 F.2d 662 (9th Cir. 1970) (custom, usage, and practice of insurance company could not override an incident of ownership contained in policy); *Schwager v. Commissioner*, 64 T.C. 781 (1975) (the possibility of a "mistake" by taxpayer did not vitiate an incident of ownership); S. Simmons, "'Incidents of Ownership'—Some Haunting Reminders," 57 A.B.A.J. 815 (August 1971). In *United States v. Rhode Island Hospital Trust Co.*, 355 F.2d 7 (1st Cir. 1966), a leading case in this area, the court noted the principle of the heavy predominance of the "policy facts" over the "intent facts." Most, if not all, of the cases, however, which hold for the Commissioner on the policy facts do so on the basis that the express language of the policy prevails over unenforceable intentions of the parties. See R. Stephens, G. Maxfield & S. Lind, Federal Estate and Gift Taxation, par. 3.13 [4] [c], P. 4–297 (1978 ed.).

[3]Sec. 20.2042–1(c)(2), Estate Tax Regs., reads as follows:

(2) For purposes of this paragraph, the term "incidents of ownership" is not limited in its meaning to ownership of the policy in the technical legal sense. Generally speaking, the term has reference to the right of the insured or his estate to the economic benefits of the policy. Thus, it includes the power to change the beneficiary, to surrender or cancel the policy, to assign the policy, to revoke an assignment, to pledge the policy for a loan, or to obtain from the insurer a loan against the surrender value of the policy, etc. See subparagraph (6) of this paragraph for rules relating to the circumstances under which the incidents of ownership held by a corporation are attributable to a decedent through his stock ownership.

other) incidents of ownership, exercisable alone or with another? At least one court has held, and the Commissioner has ruled, that if the power to cancel an insurance policy is exercisable only by terminating employment, such power is not considered to be an incident of ownership. *Landorf v. United States,* 187 Ct. Cl. 99, 408 F.2d 461 (1969); Rev. Rul. 72–307, 1972–1 C.B. 307, modifying situation 1 in Rev. Rul. 69–54, 1969–1 C.B. 221. Thus, if the employee makes an irrevocable assignment of his insurance, retaining no other rights in the policy except the right to cancel it by terminating his employment, the proceeds are not includable in his gross estate.

A presumable corollary would be that no incident of ownership exists where the insured under a group policy does not irrevocably assign the policy but nevertheless lacks any powers or rights with respect thereto, except the right to be covered— the proceeds being simply payable to a beneficiary selected by the employer. The tacit assumption of no incidents of ownership in this posture was essentially the point of departure for two circuit courts, on almost identical facts, in *Estate of Connelly v. United States,* 551 F.2d 545(3d Cir. 1977), and *In re Estate of Lumpkin,* 474 F.2d 1092 (5th Cir. 1973), revg. 56 T.C. 815 (1971). Each of these courts thus proceeded to look for other incidents of ownership—the *Lumpkin* court found one; the *Connelly* court did not. But cf. *Commissioner v. Treganowan,* 183 F.2d 288, 293 (2d Cir. 1950), revg. 13 T.C. 159 (1949) ("we are unwilling to hold this right [to terminate the coverage by resigning] ownerless * * * or at least that decedent failed to possess any of the incidents of ownership").

We conclude from the revenue rulings adverted to above that the Commissioner no longer presses the position taken in the *Treganowan* case. Therefore, in the case before us we, too, proceed from the assumption that the mere fact that Beauregard was a covered person under the policy does not, per se, bring the policy within the ambit of section 2042(2).

Petitioners argue, among other things, that the court order dissolving Beauregard's marriage obliterated any power which Beauregard may have had to indirectly change the beneficiary, and, therefore, that he possessed no incidents of ownership. As noted, respondent does not apparently deny that the court order effectively restricted the decedent from freely designating beneficiaries, but urges that since Beauregard was required only

to maintain his minor children as beneficiaries until they married, attained age 21, became self-supporting, or left the custody of their mother, Beauregard was free to name beneficiaries to succeed to whatever policy proceeds might remain unpaid after such time.

We think there is substantial merit to petitioner's argument, for once it has been agreed that the policy terms are impacted by the court order, then the effect of that impact must be determined under State law. In *Morton v. United States*, 457 F.2d 750 (4th Cir. 1972), the court applied West Virginia insurance law to determine whether the deceased insured held incidents of ownership at his death. The facts in *Morton* were summarized by the Circuit Court in the following manner:

Briefly, the policy was taken out in 1932 by the decedent at the instigation of his father-in-law, who wanted to provide financial security for his daughter. The decedent paid none of the premiums on this insurance policy and it is clear that he never considered that he "owned" it. The premiums were paid by his father-in-law, then by a corporation owned by the decedent's wife and her sister, and finally by the decedent's wife until the decedent's death in 1963. The policy was kept in the office safe of another corporation owned by the decedent's wife and her sister. [457 F.2d at 751; fn. ref. omitted.]

The policy contained the usual powers customarily reserved to an insured as owner of the policy. In 1938, the insured executed an endorsement of the policy effecting an irrevocable designation of beneficiaries and mode of settlement. The court, applying West Virginia and general insurance law, held that "Most authorities are * * * in agreement that the insured cannot deal with the policy in such a way as to defeat the irrevocably designated third party beneficiaries' interest in the proceeds, by, for example, surrendering the policy for its cash surrender value, without the consent of the beneficiaries, and we think the district court was clearly correct that this result would obtain in West Virginia." (457 F.2d at 753; fn. refs. and citations omitted.) In short, the policy facts were overridden by the application of State law. Under the law of West Virginia, as found by the court,[4] the insured in *Morton* had effectively divested himself of the power to exercise incidents of ownership either alone or in conjunction with any other person.

We thus must inquire as to whether the court order effective-

------

[4]See *Commissioner v. Estate of Bosch*, 387 U.S. 456 (1967).

ly divested Beauregard of the power to exercise incidents of ownership in the policy. Petitioners have invited our attention to a number of California cases and cases in other jurisdictions which, according to petitioners, compel a holding that Beauregard was, in fact, divested. Before discussing these cases, however, we must amplify respondent's arguments in opposition on this point. Respondent argues that notwithstanding Beauregard's obligation to name his two children as beneficiaries, he nevertheless had the power under the policy to modify the time and manner of payment of the proceeds and the power to name supplemental beneficiaries to succeed to the policy proceeds which would remain unpaid after the time his children attained age 21.[5] Respondent argues that the exercise by Beauregard of such powers would not have contravened the court order, and, therefore, notwithstanding the court order, Beauregard retained incidents of ownership. If such were true, we would then need to examine the thrust of *Estate of Connelly v. United States* and *In re Estate of Lumpkin, supra,* but for reasons hereinafter stated we need not do so.

Respondent's arguments notwithstanding, we think Beauregard's interest, if any, in the policy must be determined at the time of death; i.e., the only time a transfer taxable under the estate tax could have occurred. *Chase National Bank v. United States,* 278 U.S. 327 (1929). On this basis, whatever Beauregard could have done with the policy had he lived until his two children had attained age 21, became self-supporting, or left the custody of their mother is of no significance;[6] the relevant inquiry is, what incidents of ownership, if any, did Beauregard possess at the time of death? Although assuming arguendo that the policy terms might have vested Beauregard with such residual rights in the policy as the right to name a contingent

---

[5] Respondent does not argue that Beauregard had a reversionary interest, the value of which exceeded 5 percent of the value of the policy at Beauregard's death. Sec. 2042(2); cf. Rev. Rul. 76–113, 1976–1 C.B. 277. Since Beauregard's coverage in the group policy had no ascertainable value prior to death, a 5-percent or more reversionary interest would have no value. See Rev. Rul. 76–490, 1976–2 C.B. 300.

[6] As stated previously, the court order required Beauregard to "maintain the *minor* children as beneficiaries in connection with any group accident and health policy." (Emphasis added.)

beneficiary (the gist of one of respondent's arguments), thus perhaps conjuring up section 2037 analogies,[7] in our judgment the court order and the California law applicable thereto, discussed *infra*, effectively foreclose such an argument. As will further appear, any right in Beauregard to elect installment payments was likewise effectively divested.

It is our opinion that Beauregard's rights under the policy must be determined under California law and that under a correct interpretation of that law respondent must lose. On this point, the parties have drawn our attention to no decisions of the California Supreme Court which are on point on this issue, nor have we found any. Therefore, after giving proper regard to relevant rulings of other California courts we are of the opinion that, under California law, had Beauregard taken (in derogation of the court order) any of the steps suggested by respondent, the guardian of Beauregard's minor children could have obtained the lump-sum proceeds for them in an action brought on their behalf. See *Commissioner v. Estate of Bosch*, 387 U.S. 456 (1967). This legal right, vested in the guardian, effectively nullified any incident of ownership in the policy possessed by Beauregard at his death.

While, as stated, there are no California Supreme Court decisions, a very analogous situation was presented to an intermediate California appellate court and decided adversely to the position respondent would have us take here. In *Reliance Life Ins. Co. of Pittsburgh v. Jaffe*, 121 Cal. App. 2d 241, 263 P.2d 82 (Ct. App. 1953), the facts were briefly as follows: The insured and his spouse, in contemplation of divorce, entered into a property settlement agreement in which it was agreed, among other things, that "Reliance Life Insurance Co. policy #1091164 in the name of [the insured husband] is to be maintained by the husband, the beneficiaries are to be [the couple's two children, then minors], share and share alike, or to the survivors of them." 263 P.2d at 84. Prior to his death, the insured executed a change of beneficiary whereby he directed that the proceeds of the policy be placed in two equal trusts, with each child a beneficiary and the insured's sister the trustee of both trusts, each trust to

---

[7] Under sec. 2037, property is includable in the gross estate if, at the death of the decedent, possession or enjoyment by the recipients could have been obtained only by surviving the decedent *and* the decedent retained a 5-percent or more reversionary interest in the property.

terminate upon the beneficiary's attaining age 21. Following the death of the insured, the trustee and the potential guardian of the minor children filed competing claims with the insurance company, whereupon it interpleaded the proceeds. The trial court held for the trustee and the appellate court reversed.

We think the following language of the *Reliance Life* court states the law of California as it would be applied to the facts of the case before us:

> But the [insured] may waive his right to change the beneficiary and by contract he may convert the contingent interest [of the beneficiary] into a vested equitable interest in the policy which may not be subsequently defeated by an effort to change the beneficiary. *Chilwell v. Chilwell*, 40 Cal. App. 2d 550, 553, 105 P.2d 122; *Shoudy v. Shoudy*, 55 Cal. App. 344, 351, 203 P.2d 433.
>
> No question having been raised with respect to the execution of the property settlement, it is assumed to be valid and based upon sufficient consideration. The children as third-party beneficiaries may enforce the provisions therein made expressly for their benefit in the same manner as can a party to the agreement. Civil Code, § 1559. Regardless of whether the insured complies with the terms of the contract, it operates as an equitable assignment of the proceeds of the insurance policy. *Mutual Life Insurance Co. v. Henes*, 8 Cal. App. 2d 306, 311, 47 P. 2d 513.

After so stating the applicable California law, the *Reliance Life* court then went on to look into what was meant by the term "beneficiary" in the context of the property settlement agreement. The trustee argued that the interest which the insured attempted to vest in the children by the creation of a trust was in fulfillment of the property settlement. "But in interpreting that contract," stated the court, "its language must control and not a gratuitous interpretation thereof." 263 P.2d at 85. The court held that the parties contemplated that the children were to receive the proceeds as beneficiaries without restrictions on their rights such as a trust during their minority.

Petitioners aptly demonstrate the relevance of the holding in *Reliance Life* in their brief in the following manner:

> In ascertaining that which would be permitted under the Court Order, assuming arguendo that Beauregard could and did select a settlement option of ten years, the proceeds to his children until majority (approximately six years), with the balance to another, the result would have been that the children would have received approximately sixty percent (60%) of the proceeds and the downstream beneficiary approximately forty percent (40%) of the proceeds. Had Beauregard more directly limited the rights of his children to receive only 60% of the proceeds, there would have been no question that he would have been in violation of the Court Order. Yet Respondent argues that the Court

Order should be read in such a way so as to permit indirectly that which would not be done directly.

We agree with petitioners that such a result would have contravened the directive of the court order and, therefore, that Beauregard lacked even such contingent rights in the policy which, assuming arguendo might be considered incidents of ownership, he could have freely exercised.

The holding in *Reliance Life* has been consistently applied in subsequent California decisions and we reiterate our belief that it reflects the law of California applicable in this case. *Greenberg v. Greenberg*, 264 Cal. App. 2d 896, 71 Cal. Rptr. 38 (Ct. App. 1968); *In re Sears' Estate*, 182 Cal. App. 2d 525, 6 Cal. Rptr. 148 (Ct. App. 1960); *Halldin v. Usher*, 315 P.2d 418 (Ct. App. 1957), revd. on another issue 49 Cal. 2d 749, 321 P.2d 746 (1958).[8]

It follows that Beauregard did not possess at his death any of the incidents of ownership in the policy ascribed to him by respondent and therefore the proceeds are not includable in his gross estate. Since we have so found, it becomes unnecessary for us to consider other alternative arguments advanced by petitioners.

To reflect a concession made by petitioners,

*Decision will be entered under Rule 155.*

----

[8]The same court of appeals had previously applied essentially the same rule in *Waxman v. Citizens Nat. Trust & Savings Bank*, 123 Cal. App. 2d 81, 266 P.2d 48 (Ct. App. 1954).