IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 11, 2018 Session

## WENDY ANN BURTON V. ROBERT M. MOONEYHAM, DECEASED, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 16-604-IV      Russell T. Perkins, Chancellor**

_____

### No. M2017-01110-COA-R3-CV

_____

This is an action by the ex-wife of the decedent to establish a constructive trust to the proceeds of a life insurance policy that are payable as a consequence of the death of the plaintiff's ex-husband. In the 2011 Final Decree, the ex-husband was ordered to maintain a specified life insurance policy in the amount of $500,000 with the plaintiff to be designated as the sole beneficiary. Following the divorce, the ex-husband allowed the specified policy to lapse; however, he maintained a second life insurance policy that had a death benefit of $250,000 with seventy percent of the death benefits payable to the plaintiff and thirty percent to the decedent's mother. Following the ex-husband's death, the plaintiff commenced this action against the decedent's mother and the insurance company. The decedent's mother filed an answer in which she claimed the plaintiff had no legal rights to the insurance policy at issue. The decedent's mother also claimed she had a vested right to her share of the death benefits based on an oral contract. The insurance company deposited the insurance proceeds into court and was dismissed from the case. Thereafter, the parties filed cross-motions for summary judgment. The trial court granted summary judgment in favor of the plaintiff, relying principally on the holding in _Holt v. Holt_, 995 S.W.2d 68 (Tenn. 1999). We affirm, finding the decedent's mother had no vested interest in the policy.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Richard J. Braun, Nashville, Tennessee, for the appellant, Edna Aileen Crecelius.

D. Scott Parsley and Joshua G. Strickland, Nashville, Tennessee, for the appellee, Wendy Ann Burton.

# OPINION

This is a dispute between Wendy Ann Burton ("Plaintiff") and Edna Aileen Crecelius ("Defendant") over thirty percent of the insurance proceeds from a $250,000 life insurance policy on the life of Robert M. Mooneyham ("Mr. Mooneyham"), who was Plaintiff's ex-husband and Defendant's son.

Plaintiff and Mr. Mooneyham divorced on May 13, 2011, and the Final Decree of Divorce ("Final Decree") provided that Mr. Mooneyham would "designate [Plaintiff] as the beneficiary of his life insurance policy in the amount of $500,000, Policy No: TRO 167391 with Tennessee Farmers Life Reassurance Companies." Mr. Mooneyham also owned other policies at the time of the divorce, including Tennessee Farmers Life Insurance Company, Policy Number 149380 (hereinafter "Farmers Policy No. 149380"); however, this policy was not mentioned in the Final Decree. Following the divorce, Policy No: TRO 167391 lapsed and was never reinstated.

Although the record suggests that Mr. Mooneyham owned several policies prior to the divorce, it appears that all but one of them lapsed or were cashed in by Mr. Mooneyham over a period of time as his financial circumstances deteriorated.[1] With regard to the policy at issue in this appeal, Farmers Policy No. 149380, on March 3, 2014, Mr. Mooneyham notified the insurance company to modify the policy by reducing the death benefit from $984,019 to $500,000 and for Plaintiff to receive eighty-five percent of the death benefit and for Defendant to receive fifteen percent. On September 30, 2014, Mr. Mooneyham once again changed this policy by reducing the death benefit from $500,000 to $250,000 with Plaintiff to receive seventy percent of the death benefit and with Defendant to receive thirty percent.

In the interim, upon learning the life insurance policy that was the subject of the Final Decree had lapsed, Plaintiff filed a petition against Mr. Mooneyham for criminal contempt in Sumner County Chancery Court. Plaintiff alleged, *inter alia*, that Mr. Mooneyham no longer maintained a $500,000 life insurance policy payable to Plaintiff in violation of the Final Decree. On March 24, 2016, after holding a hearing on Plaintiff's petition for criminal contempt, the court found Mr. Mooneyham guilty of criminal contempt due to his willful and intentional failure to provide life insurance payable to Plaintiff in the amount of $500,000.[2] The court noted that "[Mr. Mooneyham] testified

---

[1] As the affidavit of his brother Lanny Mooneyham states, his brother Mark lost his business and found it necessary to live with his mother for periods of time and to depend on her for periodic cash disbursements.

[2] Plaintiff also filed other petitions for criminal contempt that are unrelated to the life insurance policy. In the same order, the court found Mr. Mooneyham guilty of a total of nine counts of criminal contempt and sentenced him to ten days of incarceration for each count.

that he had an insurance policy with [a] face amount of $250,000.00 with [Plaintiff] designated to receive 70% of the proceeds and [Mr. Mooneyham's] mother to receive 30% of the proceeds upon [Mr. Mooneyham's] death." The court ordered Mr. Mooneyham "to reinstate life insurance on his life in the face amount of $500,000, and make such policy solely payable to Plaintiff…."

On April 11, 2016, Mr. Mooneyham filed an appeal with the Court of Criminal Appeals. Mr. Mooneyham died on May 31, 2016, before the appellate court could hear the appeal. Counsel for Mr. Mooneyham filed Mr. Mooneyham's death certificate with the Court of Criminal Appeals, and on August 17, 2016, the court entered an order stating that the appeal as well as the underlying convictions for criminal contempt were abated due to the death of the appellant.

Following Mr. Mooneyham's death, Plaintiff commenced this action to impose a constructive trust on the life insurance proceeds payable to Defendant from the $250,000 Farmers Life Policy No. 149380. Defendant filed an answer denying that Plaintiff had any right to the proceeds and, by agreed order, the insurance company was dismissed from the action once it deposited the insurance proceeds with the court.[3]

Plaintiff filed a motion for summary judgment on March 10, 2017, accompanied by her affidavit. In her statement of undisputed facts, Plaintiff noted, *inter alia*, that the Final Decree required Mr. Mooneyham to maintain a $500,000 life insurance policy with Plaintiff as the sole beneficiary, and the only life insurance policy in effect at the time of his death was the $250,000 Farmers Life Policy No. 149380. Because Plaintiff relied, in part, on the Sumner County Chancery Court's ruling in which it found Mr. Mooneyham in contempt for failing to maintain the required insurance, Defendant filed a motion to strike the portions of Plaintiff's affidavit that relied on the criminal contempt order. Defendant argued that since "any judgment of criminal contempt was abated, *ab initio*," Plaintiff could not use the trial court's criminal contempt order to support her motion for summary judgment.

Additionally, Defendant filed a cross-motion for summary judgment, contending the case should be dismissed because Plaintiff was claiming an interest in a life insurance policy that was not subject to the Final Decree. Defendant also contended that Plaintiff "has no vested interest in [the policy at issue] and is not entitled to the beneficial interest of the Decedent's mother . . . who relied upon this policy in loaning her son . . . substantial funds in the months prior to his death."

---

[3] Tennessee Farmers Life Reassurance Company was named as the insurance company identified as a defendant in the complaint. Pursuant to an agreed order entered on July 27, 2016, Tennessee Farmers Life Insurance Company was substituted for Tennessee Farmers Life Reassurance Company as the corporate party-defendant.

Following a hearing on April 21, 2017, the trial court denied Defendant's motion to strike, concluding that while the Sumner County Chancery Court's criminal contempt order was void *ab initio* as it pertained to the finding that Mr. Mooneyham was in willful contempt of the court's order, it was not void to the extent the ruling identified the court's interpretation of the Final Decree. Then, the trial court granted summary judgment to Plaintiff, stating:

> The Court finds that the Final Decree and the subsequent Order of the Court entered March 24, 2016 create in [Plaintiff] a vested right to **any** life insurance policy obtained by [Mr. Mooneyham] that satisfies the mandate in the decree. *See Holt*, 995 S.W.2d at 77. A "contrary ruling would 'abrogate the power' of divorce courts in this state." *Id.* (citing *Equitable Life Assurance Soc'y v. Flaherty*, 568 F.Supp. 610, 615 (S.D. Ala. 1983)). The public policy of this state strongly favors the enforcement of court orders, and, as between [Mr. Mooneyham] and [Plaintiff], both of whom were parties to the divorce suit, neither can be heard to dispute the Final Decree or its legal effect. Accordingly, the Court finds that [Plaintiff] is entitled to receive the entirety of the proceeds of policy 149380, interplead into the Court, in the amount of $250,852.33.

(Footnotes omitted).

Defendant appealed.

## ISSUES

Defendant identified four issues in her brief for us to address.[4] We have concluded that they can be consolidated into two issues, that being (1) whether the Final Decree

---

[4] In her brief, Appellant stated the issues as follows:

I.      Whether the death of [Mr. Mooneyham] abated all criminal proceedings, not just the appeal, and thus, rendered the March 24, 2016 Order void *ab initio*.

II.     Whether the Final Divorce Decree provided [Plaintiff] with a vested interest in the Tennessee Farmers Life Insurance Company, Policy No. 000149380.

III.    Whether [Defendant] gave consideration for her beneficiary status and, therefore, has an equitable interest superior to [Plaintiff].

IV.    Whether the Chancellor erred in failing to strike [Plaintiff's] affidavit.

provided Plaintiff with an equitable interest in the life insurance policy at issue and (2) whether Defendant has a vested interest in the policy that is superior to that of Plaintiff.[5]

## STANDARD OF REVIEW

This court reviews a trial court's decision on a motion for summary judgment de novo without a presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015) (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)). Accordingly, this court must make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Id.*; *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997). In so doing, we consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002).

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. When the party moving for summary judgment does not bear the burden of proof at trial, it may satisfy its burden of production "either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye*, 477 S.W.3d at 264 (emphasis in original).

When a motion for summary judgment is made and supported as provided in Tenn. R. Civ. P. 56, the nonmoving party may not rest on the allegations or denials in the pleadings. *Id.* Instead, the nonmoving party must respond with specific facts showing that there is a genuine issue for trial. *Id.* A fact is material "if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993). A "genuine issue" exists if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." *Id.*

## ANALYSIS

Defendant contends the Final Decree has no bearing on her beneficial interest in the insurance policy at issue, Farmers Life Policy No. 149380, because the Final Decree specifically referenced life insurance Policy No: TRO 167391, which lapsed, and made no reference to any other policies of insurance owned by Mr. Mooneyham. Plaintiff relies

---

[5] We agree with Defendant that the death of Mr. Mooneyham abated all criminal proceedings and that the finding of Mr. Mooneyham in criminal contempt has no bearing on the issues in this case. *See Carver v. State*, 398 S.W.2d 719, 721 (Tenn. 1966).

on a line of cases to support her contention that she is entitled to all of the proceeds from Farmers Life Policy No. 149380 based on a constructive trust because that was the only policy in effect at the time of Mr. Mooneyham's death. We find that Plaintiff has the better argument.

"[A]n enforceable agreement, such as a marital dissolution agreement, which mandates that an individual be listed as a beneficiary of a life insurance policy existing at the time of the agreement vests in that individual an equitable interest in the designated policy." *Holt v. Holt*, 995 S.W.2d 68, 72 (Tenn. 1999), *order clarified* (June 7, 1999). "Tennessee courts have utilized equitable grounds to protect persons legally mandated to be listed as beneficiaries of a life insurance policy." *Id.* A divorce decree creates in the listed beneficiary a vested right to any life insurance policy obtained by the decedent that satisfies the mandate in the decree.[6] *Id.* at 77. As the Supreme Court explained in more detail:

> After carefully considering principles of law as well as principles of equity, we conclude that no significant difference exists between circumstances in which an identifiable life insurance policy existed at the time of the divorce, e.g., *Dossett*, supra, *Goodrich*, supra, and the circumstances of the present case. *See Flaherty*, 568 F.Supp. at 615 ("[T]his Court does not find the difference to be significant or distinguishable."). The language of the life insurance policy provision of the divorce decree in the present case requires that Elliott Holt be named as "the sole and irrevocable beneficiary" of a $100,000 policy. When Elliott Holt reaches age twenty-five, the decree mandates that all proceeds be paid over to him. Furthermore, the terms of the decree are "binding upon and inure to the benefit of the parties . . . , their personal representatives, heirs and assigns." We believe that the clear

---

[6] The facts in *Holt* are similar to this case in that the dispute was between the decedent's ex-wife and his mother over the death benefit of a policy of insurance that was not specified in the divorce decree. *Id.* at 70. What is different, however, is that in *Holt* the mother did not claim a superior interest based on a contract or the bona fide purchaser rule while Defendant here claims a superior vested right as a bona fide purchaser. *Id.* at 71. The competing contentions of the parties in *Holt* were stated as follows:

> It is undisputed that the Decedent breached his obligation under the final divorce decree to maintain a $100,000 life insurance policy listing Marilyn Holt as trustee and Elliott Holt as the beneficiary. Ms. Lewis contends that since the Decedent was not prohibited from purchasing other life insurance policies listing other individuals as beneficiaries, Elliott Holt's only remedy is an action against the Decedent's estate. Therefore, Ms. Lewis contends that the trial court should have granted summary judgment to her instead. Elliott Holt responds that the trial court properly found that he was entitled to the proceeds of the $50,000 policy.

*Id.*

language of the divorce decree contemplates a continuous obligation in which Elliott Holt should be provided for in the event of the Decedent's death. Thus, we find that the divorce decree creates in Elliott Holt a vested right to any life insurance policy obtained by the Decedent that satisfies the mandate in the decree.

*Id.*

Applying the reasoning from *Holt* in a case with facts substantially similar to those here, we subsequently held that "***[t]he divorce decree's mandate cannot be defeated by failing to name the obligee as the policy's beneficiary, purchasing insufficient coverage, or allowing the policy to lapse***." *Hinkle v. Estate of Hartman*, No. E2006-01052-COA-R3-CV, 2007 WL 700973, at \*2 (Tenn. Ct. App. Mar. 8, 2007) (footnotes omitted) (emphasis added). The courts of this state may impose a constructive trust to protect the obligee's vested equitable interest. *Id.* (citing *Holt*, 995 S.W.2d at 71).

The facts in *Hinkle* are substantially similar to those here. Pursuant to a marital dissolution agreement, which was incorporated into the Final Order of Divorce, the decedent agreed to maintain his ex-wife as beneficiary of his life insurance policy through his employment with Bi-Lo ("First Bi-Lo Policy"). *Id* at \*1. The *Hinkle* Marital Dissolution Agreement provided, in pertinent part:

The Husband shall continue to maintain and pay the Primerica Li[f]e Insurance Policy No. 13171515 and the life insurance presently maintained through his employment with Bi-Lo. The Wife shall be maintained as beneficiary with the parties' two minor sons to be equal alternative beneficiaries in the event the Wife predeceases the Husband. The parties shall equally own said policies and in the event the cash value of either policy is taken prior to death the parties shall equally divide the same.

*Id*.

The decedent subsequently left his employment with Bi-Lo and thereafter failed to obtain an equivalent replacement insurance policy to satisfy the court mandate. *Id.* Later, he was re-employed by Bi-Lo and he again purchased a life insurance policy through Bi-Lo ("Second Bi-Lo Policy"), a different policy, naming his new wife and children as beneficiaries. *Id.* Upon the decedent's death, his ex-wife filed a complaint seeking to be declared the proper recipient of the life insurance proceeds from the Second Bi-Lo Policy and to impose a constructive trust. *Id.*

The trial court found that the ex-wife was not entitled to any of the Second Bi-Lo Policy proceeds. *Id.* at \*2. On appeal, this court reversed, holding that the ex-wife had a vested right to the Second Bi-Lo Policy to the extent necessary to replace the First Bi-Lo

Policy's benefits. *Id.* at *3. We reasoned that "when a divorce decree requires maintenance of a life insurance policy and the obligor allows the policy to lapse, the obligee is entitled to what she would have received in the absence of the lapse." *Id.* at *3 (citing *Holbert v. Holbert,* 720 S.W.2d 465 (Tenn. Ct. App. 1986)) (other citations omitted).

Here, it is undisputed that (1) the Final Decree required Mr. Mooneyham to maintain a life insurance policy of $500,000 naming Plaintiff as beneficiary; (2) Mr. Mooneyham allowed the specified policy to lapse; and (3) at the time of his death, Mr. Mooneyham was insured under a policy that partially satisfied the mandate in the Final Decree. "[W]hen a divorce decree requires one party to maintain an existing, specific life insurance policy for the benefit of the other party, '***the decree in the divorce case g[i]ve[s] the [obligee] a vested right in the policy, as between [the obligee] and the insured***.'" *Hinkle*, 2007 WL 700973, at *2 (quoting *Goodrich v. Massachusetts Mut. Life Ins. Co.*, 240 S.W.2d 263, 272 (Tenn. Ct. App. 1951)) (emphasis added).

Conversely, although Defendant was a named beneficiary of the surviving policy, a beneficiary named in a life insurance policy does not generally have any vested interest in the policy, but "only an expectancy during the life of the insured." *Id.* (quoting *Goodrich,* 240 S.W.2d at 269). Moreover, Defendant's rights as a beneficiary derive from Mr. Mooneyham's rights; therefore, she "can stand on no higher ground than he does." *Id.* at *3 (quoting *Goodrich*, 240 S.W.2d at 270).

The foregoing notwithstanding, Defendant contends she has a vested interest in Farmer's Life Policy No. 149380 that is superior to that of Plaintiff because she gave consideration for her beneficial interest.[7] Defendant relies on *Pernick v. Brandt*, 506 N.W.2d 243, 245-47 (Mich. Ct. App. 1993) and *Greenberg v. Greenberg*, 264 Cal. App. 2d 896, 899-900 (Cal. App. 1968) to contend she has a superior and vested right to her share of the death benefit as "a bona fide purchaser." We find this contention without merit because, *inter alia*, Defendant failed to prove the existence of a contract from which a vested right could arise.

_____

[7] Although we are not aware of the bona fide purchaser rule having been applied to defend an equitable claim to life insurance proceeds in Tennessee, it has been applied in other jurisdictions. *See* e.g. Kelvin H. Dickinson, *Divorce & Life Insurance: Post Mortem Remedies for Breach of a Duty to Maintain a Policy for a Designated Beneficiary*, 61 Mo. L. Rev. 533, 592 (1996); *see also Equitable Life Assurance Soc'y of the U.S. v. Jones*, 679 F.2d 356, 359 (4th Cir. 1982) ("(I)f the second beneficiary had, without notice of the prior interest, given value for the change of beneficiary, the second beneficiary would have a superior equity and would be entitled to the life insurance proceeds."); *Lowry v. Lowry*, 463 So. 2d 540, 542 (Fla. Dist. Ct. App. 1985) (named beneficiary held not "bona fide purchaser for value"); *Hirsch v. Travelers Ins. Co.*, 341 A.2d 691, 693 (N.J. Super. Ct. App. Div. 1975) ("Where two innocent parties are involved and the recipient of a wrongful transfer is a Bona fide purchaser for value, the recipient will prevail. . . .").

Defendant's claim of a vested interest in the policy at issue is based on an alleged oral contract. "A beneficiary may acquire a vested interest by contract," *First Nat. Bank of Shelbyville v. Mut. Ben. Life Ins. Co.*, 732 S.W.2d 278, 280 (Tenn. App. 1987) (citations omitted), and a contract can be expressed, implied, written, or oral. *Thompson v. Hensley*, 136 S.W.3d 925, 929 (Tenn. Ct. App. 2003). "While oral contracts are enforceable, persons seeking to enforce them must demonstrate (1) that the parties mutually assented to the terms of the contract and (2) that these terms are sufficiently definite to be enforceable." *Burton v. Warren Farmers Co-op.*, 129 S.W.3d 513, 521 (Tenn. Ct. App. 2002) (citations omitted). Moreover, the contemplated mutual assent "should not . . . be inferred from the unilateral acts of one party or by an ambiguous course of dealing between the parties from which different inferences regarding the terms of the contract may be drawn." *Id.* It "may not rest solely on the uncommunicated intentions or states of mind of the contracting parties." *Id*.

Surprisingly, the record does not contain any testimony from Defendant.[8] Thus, the record is devoid of any testimony from the parties to the alleged oral contract, Mr. Mooneyham or Defendant. The only "evidence" in the record that suggests the parties entered into an agreement comes from Lanny Mooneyham, the brother of the decedent and son of Defendant. His testimony, however, which is set forth in his affidavit, fails to provide specifics. The testimony is based on conclusory statements concerning a vague agreement his brother, the decedent, and Defendant may have had as it pertained to Defendant's financial support of the decedent, much of which consisted of weekly cash disbursements of unspecified amounts. Lanny Mooneyham also discusses the decedent's intention to name Defendant as a beneficiary of a life insurance policy, without specifying the amount of her beneficial interest.

As our courts have held, "Indefiniteness as to any essential element of an agreement may prevent the creation of an enforceable contract." *Peoples Bank of Elk Valley v. ConAgra Poultry Co.*, 832 S.W.2d 550, 553 (Tenn. Ct. App. 1991). A contract must be sufficiently explicit so a court can perceive the respective obligations of the parties. *Doe v. HCA Health Servs. of Tennessee, Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001). Here, the facts on which Defendant's claim are based are too vague and indefinite to constitute an enforceable contract. Therefore, Defendant failed to prove that she had a vested interest in the insurance proceeds.

For the foregoing reasons, we affirm the ruling of the trial court.

---

[8] There is no affidavit and no deposition of Defendant in the record. The only "evidence," and thus, the only facts Defendant relies on is a brief affidavit of her son, Lanny Mooneyham.

**IN CONCLUSION**

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Edna Aileen Crecelius.

_____

FRANK G. CLEMENT JR., P.J., M.S.